Fine vs. Rogers,

15  315
98a  209

FINE, RESPONDENT VS. ROGERS, APPELLANT.

1. The correctness of the action of the court below, in giving or refusing instructions, will be examined; though not made a ground of error in a motion for a new trial. The propriety of this change of practice is the stronger, from the fact, that the court, impressed with a sense of the danger of the rights of parties, in the exercise of such jurisdiction, has declined considering motions for new trials, when they rest upon the question of the verdict's being against the evidence, or the weight of the evidence.

2. That a parol contract may be rescinded by the parties, while executory, without a formal release, is a familiar principle of law; and that such recision may be inferred from the acts of the parties is equally clear; and very slight circumstances will be sufficient to show the assent of a party, when he is obviously interested in the rescision of the contract.

APPEAL from St. Louis Court of Common Pleas.

STATEMENT OF THE CASE.

This was an action, instituted under the New Code, November 17th, 1849  The plaintiff,

Fine vs. Rogers.

Fine, sets forth in substance that on the 13th day of February, 1849, a contract was made between him and William Atkinson, whereby he was to serve as pilot and on particular occasions as captian of the steamboat Sacramento in the Missouri river trade, from the 12th day of March, 1849, to the first day of November 1849, at the wages of $200 per month and that if the boat should be lost, the contract to cease, and if she should be engaged in another direction then Fine to do like services on any other boat running in the Missouri river, that the master of the Sacramento should direct. That at the time of the making of the contract, Atkinson was master and part owner of said boat, and said Rogers was part owner; that he, Fine, had been always ready and willing and offered to perform his part of the contract, but defendant since September first, 1849, refused to accept his services, and would not permit him to serve, and without any just cause to his damage of $300, which he claimed as due and owing him

Defendant considered that about June 20th, 1849, Fine expressly waived the contract and requested the owners of the boat to release him, and he was released and went into the employment of others, and thereupon the owners of the boat employed another person and admits that Fine afterwards tendered his services, but they were rightfully refused, &c.

On the trial the evidence was the contract, as set forth in the petition, and defendant read in evidence the deposition of one Maline who testified in substance as follows: that while the boat was laid up in the latter part of June, or first of July, he asked Fine what he meant to do with his contract, remarking, that it was due to the owner, that he should put in his time some where else. Fine replied that he was in treaty with the steamboat Munroc and if he effected an engagement with her he would give up his contract with the Sacramento; that the Munroe would be in port in a few days, and he then would know; about July 10th or 15th, Fine came into the office of Alfred Rogers & Co , and said he had effected his engagement with the Munroe and would relinquish his contract with the Sacramento, at the same time asking witness to pay his bill then presented, which he refused to pay, because he had no funds of the steamboat in his hands, telling Fine that Rogers would, in few days be in town, and he had better see Rogers about it. Some few days after he again met Fine and Fine told him that Rogers declined paying his bill because he had no money of the boat on hand, remarking (he Fine,) that it did not make much difference, as his contract with the Sacramento was better than with the Munroe, he (witness) then understanding that Fine was on the Munroe, he distinctly understood in the conversation about the bill that Fine would give up the contract if he made one with the Munroe; he (witness) was then acting for Alfred Rogers & Co., who were owners in the boat; he paid several claims for the boat, received money for the boat, and paid it out on its order. There was then no representative of the boat except himself in the city; is now a clerk on the Sacramento. On cross-examination he said that at the time Fine handed in his bill he was clerk in Rogers & Co.'s office at St. Louis, from Joseph & John Rogers surviving partners of Rogers & Co.; he had power to transact any business for them. Their business at St. Louis was that of commission merchants. Alfred remained in St. Louis and the others in Cincinnati; witness was their book-keeper for about one year since the death of Alfred. John had been at St. Louis and gave away; he had no special power to sell the boat, run her or contract for crew and officers and discharge them; he never undertook to do either, and was never requested to do either, but he had paid hands on the order of the clerk of the boat. Fine did not state to him as a condition to his relinquishing his contract, that his bill as rendered, should be paid; at the time he told him that Rogers declined paying his bill he said he should hold on to his contract as he would make $1000 more than by his proposed arrangement with the Munroe; he had heard stated the contract substantially with the Sacramento, but thinks he never read it; he was present when Capt. Atkinson stated the terms of it to Alfred Rogers before it was made. John & Joseph Rogers continue to own interests in the boat; about ten days after Fine handed in his bill, he handed it to John Rogers; the boat began running the Missouri river again about Sept., 12th, and paid her pilots $150 a month each; he has been clerk on her ever since she began running. On re-examination he said that he had received from John Rogers instructions to

Fine vs. Rogers.

pay off all hands and lay the boat up as soon as possible; also to receive any money in the hands of the clerks and take the books; he was aware of Fine's contract when Fine handed in his bill.

This was all the evidence. Defendant's counsel demanded that he might conclude to the jury, which the court refused, to which decision of the court defendant excepted: 7 Mo. Rep. 509.

The following instructions were given by the court:

1. If the jury believe from the evidence that the plaintiff's statement to the witness Maline on presenting his bill that he relinquished the contract was made on the condition that his bill was paid, then such statement was not a relinquishment.

2. The plaintiff is entitled to recover in this case unless the defendant proved that he refused to act under the contract or released it.

3. In order to make a relinquishment of the contract by the plaintiff to be valid it must be proved by defendant that it was made to a person competent to agree to it and assent to it and that such person did assent to it and accept it or that the plaintiff refused to act farther under the contract and acceptance of the relinquishment may be proved directly or by circumstances.

4. If the jury believe from the evidence that plaintiff's statement to Maline about relinquishing the contract was made in connection with the payment of his account, and depended upon that, and that the payment of his account was refused and that the plaintiff said he would hold on to the contract, in that case plaintiff is entitled to recover.

5. If the jury believe from the evidence that the plaintiff agreed to rescind the contract and acted in that agreement with the assent and acquiesence of the defendant, there can be no recovery by plaintiff on the contract for services offered to be earned by the plaintiff after that time.

To the giving of the above instructions defendant excepted.

At the request of defendant the court gave the following instructions, to-wit:

1. An unsealed contract can be rescinded by agreement of the parties whether there be consideration or not while it is executory.

2. If the parties agree to rescind the contract and acted on that agreement, then plaintiff cannot recover for services offered to be earned by him under said contract after that time.

The following instruction, asked by defendant, the court refused to give, and the defendant excepted to such refusal.

If the jury believe from the evidence that the plaintiff agreed to rescind the contract and announced his intention to defendant or his agents and then acted on this instruction and agreement by going on another boat and that such his actions and course was acquiesced in and assented to by plaintiff on the contract given in evidence for services earned or offered to be earned after that time.

The verdict was for defendant in error. The plaintiff in error filed a motion for a new trial for three reasons :

1. Because verdict and judgment were against law.

2. Because the same were against evidence.

3. Because against law and evidence.

4. Because the jury was misled as to the effect of the instructions by the agreement of plaintiff's counsel. This motion was overruled and Rogers applied to this court.

## SPALDING & SHEPLEY, for appellant.

I. The third instruction asked by defendant below should have been given.

1. An unsealed contract can be rescinded by the parties to it while it is executory: 9 Mass. Rep. at page 84; the court say "all executory contracts may be rescinded by the parties to them," &c., and the acts and declarations of the parties in that case were evidences showing it had been rescinded: 4 N. H. 196; an executory agreement in writing not under seal,

may before breach be discharged and abandoned by a subsequent unwritten agreement: Chitty on contracts, 602 (Law Lib. Ed. pages 102, 776.) "A contract not under seal, whether verbal or written may before breach be discharged by parol:" 12 Vermont 625, Blood vs. Enos; to the same purport and the jury are to judge.

2. And the acts and declarations of the parties are evidences of such rescinding or release of the contract.

3. This instruction wisely hypothetically states the fact and then authorizes the jury to draw the inference as to whether a reliance or agreement to rescind existed, and then declares the law on such inference being deduced by the jury.

II. The third instruction given for plaintiff below is erroneous, in that it declares a relinquishment or release of the contract would be made ouly to a person competent to agree and assent to it. This would be understood by the jury as a declaration that the transactions and interviews set forth in the evidence could not amount to a release, or did not sufficiently prove one. The authorities show that the relinquishment or release from acts and conduct of the parties.

III. The court below prohibited the defendant's counsel from concluding the case to the jury though they held the affirmative.

IV. Cowan & Hill's notes 847,—that the New York doctrine is that if the matter has been in issue once in another case, it is conclusive, &c.

The case in the circuit court was tried after the present one in the common pleas was cited and set up in the circuit court to bar the defence there; and now that is set up in this; so that each defeats the other.

The plea of appellee in this court is, of a judgment several months after the judgment in the present case the trial in the circuit court, the record in the case was produced, and according to the law contended for, should have caused that court to hold that the defendant in the circuit court was concluded. Having produced such a result there, then that judgment is produced here to defeat the appeal, so that the judgment in this case in the common pleas caused the subsequent judgment in the circuit court and this latter judgment is now pleaded as a bar to the appeal. That is the judgment from which we appealed is a bar to the appeal.

## TODD & KRUM, for respondents.

I. The whole defence being an alleged release of the contract the plaintiff below, Fine, was entitled to recover, unless such release was proved. This is confessed by the pleadings. Upon this point the evidence was vague, uncertain and ambiguous, and by no means proper to an impartial mind that Fine ever definitely assented to a release, waiver or abandonment of the contract. It only shows a negotiation therefor—a talk about it and that it failed by means of Rogers' refusal to settle with Fine on what was owing him or that he claimed. The evidence by no means proves an "aggregatio mentium." Upon this point the court fully instructed the jury and as favorably as the law warranted or the defendant below asked, notwithstanding the refusal of instruction numbered three, for the same was given in that of defendants, numbered two, and the one stated last as asked for by the plaintiff below. Besides, upon this point, the defendant below makes no complaint in his motion for a new trial.

II. It is in the discretion of the court which party shall conclude to the jury: 7 Missouri Reports 509–514; Sedgwick on the measure of damages page 579, volume 1; Greenleaf on Ev. section 76, page 91.

III. Not one of the errors assigned was set forth in the motion for a new trial as a reason therefor. Therefore this court will decline noticing them: 10 Mo. Rep. pages 516–517; 11 Mo. Rep. page 623, and there was no error in refusing to grant the motion on the ground set forth therein for the evidence of the only witness Maline, was suspicious, conflicting and upon its face carried a palpable discredit. If only one witness, a jury may disbelieve him; 11 Mo. Rep. 364. Besides, the evidence taken without the discredit the jury might well attach to it proved nothing

clear and certain, yet the burden was upon the defendant to make that defence clear and satisfactory.

IV. The subsequent judgment of the circuit court in the suit of Fine vs. steamboat Sacramento ought to bar the further prosecution of the defence of this suit: 2 Hill & Cowan's notes to Phillips on Ev. pages 827–29 and following; 11 Mo. Rep. page 243.

GAMBLE, J., delivered the opinion of the court.

Before proceeding to examine the instructions in this case, it is necessary to dispose of a preliminary question.

The point is made that because the giving and refusing instructions was not made a ground for the motion for a new trial, this court, in accordance with former decisions, will not examine into the correctness of the action of the court below, either in giving the instructions asked by the plaintiff or in refusing that asked by the defendant.

It has been the practice of this court, to regard errors of the circuit courts in the decisions made during the progress of a trial, as waived by the party against whom the error was committed, unless there was a motion for a new trial made, and the error of the court upon the specific point assigned as a reason for the motion. But the law has been thrown into some confusion by the statute to reform pleadings and practice in courts of justice. In the last clause of the 3rd section of the 11th article of that act, there is an enumeration of cases in which the courts of original jurisdiction are required to grant new trials. The cases are surprise, misdirection by the court, mistake by the jury, the verdict being contrary to instructions, fraud or deceit practiced upon either party, or mistake or perjury of a witness. It is commanded, that if the court shall be satisfied that an improper verdict has been occasioned by either of these causes, and that the party has a just cause of action, or defence, a new trial shall be granted, and if necessary the pleadings shall be amended.

It cannot have been the intention of the legislature by this enumeration of causes for which a new trial may be granted, to exclude other causes as the ground for the exercise of this power. It cannot have been intended that the circuit courts should no longer have power to grant new trials on account of the improper admission or rejection of evidence, or when the verdict found under the influence of passion or prejudice is contrary to evidence, or when the damages are excessive, or when the jury have been guilty of misbehavior, or when there is newly discovered evidence, that would have materially affected the verdict. It is not to be believed that there was any design to limit the necessary control of courts over the verdicts of juries, nor is there any necessity

Fine vs. Rogers.

for so constructing this part of the statute as to produce that effect. To give it any force, however, it must be taken to have given additional emphasis to the obligation of the courts, to grant new trials in the enumerated cases. There is no direction as to the mode in which an application for the new trial is to be made, and if this is to be in accordance with the former statute, still the rules that would formerly have governed the court are not the same that are to be applied under this act, for new trials are to be granted under its direction even where the case made in the pleadings is not sustained by evidence, and where it will be necessary to amend the pleadings after the new trial is granted, in order to sustain the action or defence.

It is to be observed, that many of the grounds specified in this clause of the act are common, familiar reasons for new trials, and others, if not entirely new, are of exceedingly rare occurrence. An application for a new trial on the ground that a particular witness had committed perjury at the trial, would present a question of great delicacy to the court before which the trial took place, when not only the evidence contradicting the witness, but his manner and all circumstances calculated to discredit it or to sustain his testimony were known to the court. If such questions were brought before this court, where nothing can appear but the inconsistencies in the testimony given by the witness and the contradiction of his testimony by other evidence, as the whole matter would be spread on a bill of exceptions drawn by the counsel of one of the parties, there would be the greatest danger of doing injustice to the parties and to the character of the witness implicated.

It may be assumed to be the pervading spirit of the code to decide cases upon all questions of law and fact, without any adherence to forms. The 6th section of the 19th article, allows bills of exception to be taken to all opinions of the circuit courts in the progress of trials as heretofore. The exceptions thus taken are intended to bring these opinions and decisions before the court for revision, and we think it is most consistent with the design of the legislature to give the parties the benefit of such review without requiring any motion for a new trial to be made. The propriety of this change of practice is the stronger, from the fact, that the court impressed with a sense of the danger of the rights of parties in the exercise of such jurisdiction, has declined considering motions for new trials when they rest upon the question of the verdict's being against evidence, or the weight of evidence.

Proceeding then to the consideration of the instructions in this case, it is the opinion of the court that the third instruction taken by itself was calculated to mislead the jury.

Fine vs. Rogers.

That a parol contract may be rescinded by the parties while executory, without a formal release, is a familiar principle of law, and that such recision may be inferred from the acts of the parties, is equally clear, very slight circumstances will be sufficient to show the assent of a party when it is obviously for his interest that the contract should be terminated; as in the present case, when the steamboat on which the plaintiff was engaged, was withdrawn from business and laid up, the crew paid off and discharged, and the contract with the plaintiff entitled him to the same compensation, whether the boat was running or not. In such case an offer, on his part, to rescind, and his subsequent acts, only justifiable on the ground that a recision had taken place, would well authorize a jury to find such recision.

By the third instruction the attention of the jury would naturally be directed to the conversation between Fine and the witness Maline, and when they were told, that in order to make a relinguishment of the contract valid, it must be proved by the defendant that it was made to a person competent to assent to it, and that such person did assent to it and accept it, or that the plaintiff refused to act under the contract, they would infer that if Maline had no power to make the agreement to rescind, then there was no rescision.

This instruction thus understood, would have led the minds of the jury away from all consideration of the acts of the plaintiff in going on board the Monroe and acting as her pilot, from which, connected with his declarations, the jury might have well believed that the contract was rescinded. Because the instruction might have made such impression on the mind of the jury, it has endangered the judgment in the case, but on a close examination of the fifth instruction, we think the error of the third is cured as it states the facts that would prevent a recovery by the plaintiff.

The fifth instruction informs the jury, that if the plaintiff agreed to rescind and acted on that agreement with the assent and acquiescence of the defendant, there can be no recovery for services subsequently offered to be rendered. This instruction gives proper force to the acts of the plaintiff, and being understood by the jury would present the question of fact to be tried by them fairly for their consideration.

It is undoubtedly true that the rescision of a contract may be properly found, although no distinct proposition to rescind, be made by either party, can be shown. Their acts and declarations may establish the fact as satisfactorily as the most distinct evidence.

The refusal of the defendants instruction did not prejudice him. Al though it applied the principles of law, expressed in the fifth instruction

21

---

Mosely and wife vs. Hunter.

---

given for the plaintiff, to the facts in evidence, and was therefore preferable in form, yet it did not differ in the principles of law it contained from the fifth instruction.

The judgment will be affirmed, the other judges concurring.