Milburn agt. Belloni.

---

## SUPREME COURT.

ISAAC G. MILBURN, respondent agt. ROBERT BELLONI, and others appellants.

A *general agent* constantly in the employ of the business of the principal to make sales in the articles in which they are dealing, has authority to bind his principal by an express *warranty* of an article sold.

Even if such an agent for selling exceeds his positive authority or directions in giving a warranty, the purchaser who receives no information to that effect, cannot be prejudiced by the fact.

The defendants' agent warranted or promised that the coal dust which he sold to the plaintiff "had no dust of soft bituminous coal mixed with it." In an action for a breach of this warranty, the plaintiff proved that he stated that he was purchasing the coal dust for the purpose of making brick, and that soft coal dust would not answer that purpose, and would destroy or injure the brick if it should be used,

*Held,* that the defendants could not be held upon an *implied warranty* that the article was suitable for the purpose for which it was purchased, or for anything beyond the *express agreement* of their agent that it was the dust of anthracite coal exclusively; the action being upon a warranty and not for fraud, and depending altogether upon a breach of a positive agreement.

Therefore the *rule of damages* where the article is proved to be not as warranted, must be confined to the difference between the value of the article as it was, and its value as it would have been if it had been what it was represented to be; not to the damages that would arise from a breach of warranty that the article *was fit for use in making brick.*

*Second District General Term, October,* 1861.

EMOTT, BROWN and SCRUGHAM, *Justices.*

THIS was an action on a warranty that coal dust sold was the dust of hard or anthracite coal, when it actually contained an admixture of soft or bituminous coal.

The plaintiff was a manufacturer of brick in Orange county, near Newburg. The defendants are large dealers in coal in the city of New York. The dust of hard coal is used in the manufacture of brick. Soft coal, if so used, destroys the brick. The warranty alleged was made by one French—in charge, at the time, of the defendants' coal yard—and was, that " the dust was that of hard coal, and contained no admixture of the dust of soft coal." The price paid for the whole of the coal dust was only $37.50. Plaintiff used it, and his bricks were injured to the extent of $650. The cause was tried before Hon. S. McKISSOCK, referee, who reported in favor of the plaintiff for the whole amount, $650 damages, for which, with costs, judgment was entered.

Defendants appealed, claiming that the rule of damages in case of warranty was not as held by the referee. The general term have reversed the judgment, on the ground that the rule of damages adopted by the referee was erroneous—that to make such a rule of damages as adopted by

him applicable, there must be a warranty that the article was fit for the specific purpose for which it was to be used.

GILBERT DEAN, *for appellants.*

D. C. RINGLAND, *for respondent.*

By the court, EMOTT, Justice. The person in the employ of the defendants who made the sale of coal dust to the plaintiff was authorized to make such sale in the business of the defendants, and they are bound by the warranty given by him in the transaction. He was a general agent of the defendants, constantly in their employ, having charge of one of their yards, and accustomed at least occasionally to make sales from the yard. His authority and general employment were recognized by one of the defendants, who came into the yard before this transaction was completed, and allowed or directed him to make the sale, as well as by the subsequent ratification of the act. Even if French, as an agent for selling, exceeded his positive authority or directions in giving a warranty, still, as no information to that effect was given to the plaintiff, he cannot be prejudiced by the fact. This was not a special agency for this particular transaction, but a general agency in the business of the defendants, to make sales of the articles in which they were dealing ; and the rule of law as to such agents in the particular now under consideration is undisputed.

The referee finds that the defendants' agent warranted or promised that the coal dust which he sold to the plaintiff " had no dust of soft or bituminous coal mixed with it." This is the only warranty proved, and upon this alone, or for its breach, the action is brought. It is true that the evidence establishes and the referee finds, that the plaintiff stated that he was purchasing the coal dust for the purpose of making brick, and that soft coal dust would not answer that purpose, and would destroy or injure the brick if it should be used. But he did not ask nor receive a warranty that the coal dust was fit for this business, nor any

other warranty than that it contained no soft or bituminous coal. It was a sale of an existing article, and not a contract for its manufacture. There is in such a case no implied warranty, such as will arise ·in some cases where an article is ordered to be made or procured for a special purpose. The distinction is well illustrated in an observation of Mr. Justice MAULE in the course of the argument in *Keates* agt. *Kadogan*, (2 *Eng. L. & E.*, 320,) which is often quoted. " If a man says to another, ' Sell me a horse fit to carry me,' and the other sells a horse which he knows to be unfit to ride—or it might be said upon that, sells a horse which is unfit to ride, thus representing the fact to be otherwise—he may be liable for the consequences; but if a man says ' Sell me that gray horse to ride,' and the former sells it, knowing that the latter would not be able to ride it, that would not make him liable." The defendants in the present case cannot be held upon any implied warranty that the article was suitable for the purpose for which it was purchased, or for anything beyond the express agreement of their agent that it was the dust of anthracite coal exclusively. It will be remembered that the action is upon a warranty and not for fraud, and depends altogether upon a breach of a positive agreement.

This is indeed, as has been already observed, the finding of the referee. The warranty which he determines was made and broken, was a warranty that the article was free from soft coal, and not that it was fit for use in making brick. But the rule of damages which was applied referred to a warranty of the latter description, that is, to a warranty of the fitness of the article for the purpose to which it was to be applied. If we lay out of view all which occurred between these parties at the time of the sale in reference to the intended use of the article, as immaterial to the legal aspect of the case, it will become very obvious that the true rule of damages for a breach of the warranty which was actually given, would have been the difference

Milburn agt. Belloni.

between the value of the article as it was, and its value as it would have been, if it had been what it was represented to be.. The defendants are not responsible for the consequences of an improper use of the article they sold, because they simply agreed that it was a certain thing, and not that it was fit for a certain purpose. The rule is well laid down in the case of *Hargous* agt. *Ablon*, (5 *Hill*, 472, and 3 *Den.*, 406.) But the referee has applied a different rule. He has in fact decided that one kind of warranty was given, and proceeded to award damages for the breach of another and a different one. The injury which the plaintiff sustained in his kiln of brick was not the consequence of the fact that the dust which he bought contained bituminous coal, but of his making use of the dust when it contained that ingredient. It was his duty to have ascertained that fact before using the article. He had no right to proceed without inquiry or examination and use an article which would damage his business, relying upon a warranty which only went to the fact of the nature or character of the article, and not to the effect of using it, and still hold the defendants responsible for the consequences of his acts. The warranty was broken immediately upon the sale ; the fact could then have been known, and the damages, if any, ascertained and demanded. The plaintiff cannot now hold the defendants responsible under this warranty for the remote consequences of his own subsequent action. His recovery under these pleadings and proofs should have been limited to the difference between the value of the article sold him as it was, and its value as it would have been if it had been such as it was represented.

As the referee erroneously applied a different rule of damages, the judgment entered on his report must be reversed, and a new trial ordered at the circuit, the costs to abide the event.

BROWN, J., concurred.

SCRUGHAM, J., dissented.