### DRAPER & COLE *vs.* SWEET and others.

66b 145
f47ap276

Where property is sold with a warranty, to be applied to a particular use, if it be of such a nature that its defects can be readily ascertained, and in fact are ascertained, and yet the purchaser persists in using it, whereby losses and expenses are incurred, he does so in his own wrong, and cannot recover the amount of such expenses and losses as damages for a breach of the warranty.

The defendants sold to the plaintiffs a quantity of steel, warranting it to be first-class steel, with knowledge that it was to be used to make oil-drills. The steel proved unsuitable for that purpose, and the defects in it were discovered as soon as the plaintiffs began to use it. *Held* that they had no right, after that, to go on making drills in the expectation of recovering of the defendants, upon the warranty, the expenses or loss of profits.

APPEAL, by the defendants, from a judgment of the county court of Onondaga county, affirming a judgment rendered by a justice of the peace.

The facts appear in the opinion of the court.

*W. H. Gifford,* for the appellants.

*Wm. J. Hough,* for the respondents.

*By the Court,* MULLIN, J. This action was commenced in a justice's court, to recover damages sustained by the plaintiffs by reason of a breach of warranty that certain steel purchased by the defendants of the plaintiffs was first-class steel, whereas it was in fact rotten—would not bear a proper temper to make it fit for use—it was fire cracked—would not adhere to iron—had no strength in it, and was, for these reasons, of no use to the plaintiffs.

The plaintiffs recovered, before the justice, $200 damages, and $15 costs.

To authorize this recovery, the court must have found the warranty alleged in the complaint, and a breach of it. And we must, on this appeal, assume these findings of fact to be in accordance with the evidence.

The only question, then, for us to consider is whether

the court below committed an error in awarding damages for the breach of the warranty.

The mode in which the court arrived at the damages is not stated ; and we can only arrive at it by ascertaining what damages the plaintiff was legally entitled to, and then if the data furnished show that a larger amount has been allowed them than the law allows, we may be able to protect the plaintiffs by a reversal or modification of the judgment. But if no data are furnished by which we can arrive at the amount of damages, then the judgment must stand, although we may be satisfied that injustice has been done.

The usual measure of damages, on breach of warranty, is the difference between the value of the property as it is warranted to be, and its value in the condition it is at the time of the sale. The plaintiffs had of the defendants 446 pounds of steel, which they kept and used. This, at forty cents per pound, amounted to  . $178 40
They paid, towards it . . . . . . . . . 150 98

Now if the steel was actually worthless (and the evidence on the part of the plaintiffs would authorize that finding,) then the difference between first-class steel and that actually sold would be the whole market value of that quality of steel. This, it will be seen, is not $200, and is only $178.40. The excess of the judgment over and above the market price is not authorized by law, unless the case is one in which a different rule of damages applies.

The plaintiffs insist that as they informed the defendants of the use which they intended to make of the steel, to wit, to make oil-drills, the warranty is to be treated as a warranty that the steel would be suitable for making such drills, and that they are, consequently, entitled to recover the expenses incurred in making such drills, they proving useless, and the damages paid to those for whom such drills were made. In other words, they claim to be entitled to recover the difference be-

tween the value of first-class steel made into drills and
the value of the steel actually delivered, which, for the
purpose of making drills, was utterly worthless.

It is well settled that if a vendor sells property and
warrants it to be suitable for a specific purpose, and it
is applied to that use, and proves to be, in whole or in
part, unfit for such purpose, he is liable for the differ-
ence in value between the article as it actually is, and
what its value would be, if as represented. And if, in
the ordinary course of things, a profit would have re-
sulted to the purchaser, which profit has been lost by
reason of the defect in the thing sold, the vendor is
liable for such loss of profit; provided the loss may be
presumed to have been in the contemplation of the par-
ties, as damages resulting from the breach of the war-
ranty. (*Passinger* v. *Thornburn*, 34 *N. Y.* 634, *and
cases cited.*)

To bring a case within this rule, it must clearly appear
that the warranty applied to the use. It is not enough
that the purchaser informs the seller of the use to which
he intends to apply the property. (*Prentice* v. *Dike*,
6 *Duer*, 220. *Milburn* v. *Belloni*, 34 *Barb.* 607. *Blan-
chard* v. *Ely*, 21 *Wend.*, 342.)

When the sale is of property to be applied to a par-
ticular use, and expenses are necessarily incurred in
applying it, and losses sustained by reason of the user,
very different considerations are presented. In such a
case, if these expenses and losses are not allowed as
damages, the purchaser is subjected, unjustly, to loss,
which, in equity and good conscience, the seller ought
to pay. But when the property is such that its defects
can be readily ascertained, and in fact are ascertained,
yet the purchaser persists in using it, whereby losses
and expenses are incurred, he does it in his own wrong,
and the law will not aid him in recovering any such
demands.

It is clearly established by the plaintiffs' witnesses

that the defects in the steel were discovered as soon as they began to use it. They had no right, after that, to go on making drills, in the expectation of recovering for the expenses, or loss of profits, of the defendants. If they could recover for making drills, they could with equal propriety recover if they had procured it to make into watch springs, one pound of which would be worth tons of unwrought steel.

I cannot think that the steel sold the plaintiffs was worthless; and I am of opinion that justice would be done by reversing the judgments of both the county court and the justice, and thus enabling the parties to retry the cause.

Judgment reversed.

[ONONDAGA GENERAL TERM, April 7, 1868. *Foster, Mullin* and *Morgan,* Justices.]