[No. 9871.  Department Two.  March 9, 1912.]

Robert Johns, *Appellant*, v. Ozias P. Jaycox *et al.*,

*Respondents.*[1]

Principal and Agent—Sales Agent—Authority—Sales—Warranty by Agent.  A sales agent of talking machines has no implied authority to guarantee an average number of sales of records for each machine sold, under the rule that there is no implied authority to give a warranty where the warranty is beyond the usage of the business; especially where he carried a printed form of contract without apparent authority to modify it, and which should have put the buyer on inquiry; evidence of a prevailing custom being necessary to sustain such an extraordinary guaranty.

Sales—Warranty—Waiver.  Where the seller repudiated a guaranty made by his sales agent, and requested a telegram in case the buyer desired the balance of the goods shipped without the guaranty, a telegram directing shipment of the balance as ordered is an acquiescence in the seller's claim, and waives the guaranty, and the buyer cannot thereafter claim that, the guaranty having induced the contract, there could be no contract if the guaranty was void.

Appeal from a judgment of the superior court for Walla Walla county, Brents, J., entered March 14, 1911, upon findings in favor of the defendants, in an action on contract, after a trial on the merits to the court.  Reversed.

*W. B. Mitton* and *Brooks & Bartlett*, for appellant.

*T. P. & C. C. Gose*, for respondents.

Ellis, J.—Action to recover a balance due upon a written contract for two hundred talking machines, sold by the plaintiff to the defendants, through an agent.  The material facts are nearly all admitted.  The machines were purchased to give away to defendants' customers as an advertisement.  When first approached, the defendants declined to make the purchase.  The agent then proposed that, if the defendants would execute the printed form of contract

[1]Reported in 121 Pac. 854.

which he produced, he would give them a written guaranty that the defendants would sell an average of twenty-five records to each customer to whom a machine was given. Thereupon the defendants, and the plaintiff by his agent, executed in duplicate and mutually delivered the printed contract for the purchase of 200 machines, with nine seven-inch records each, at a price of $8.20 for each machine and its nine records. In the contract, the plaintiff agreed to furnish to defendants any number of seven-inch disc records at thirty cents each, net, with the understanding that they would be retailed by defendants at fifty cents each, or given away without charge. The agent then executed in the name of the plaintiff and delivered to the defendants the following guaranty:

"Part of contract attached between Standard Talking Machine Co. and O. P. Jaycox & Co. All machines and records not sold or given away four months from receipt of goods and returned in good condition freight paid to Chicago, Ill. Cost price of each machine and records will be refunded to O. P. Jaycox & Co. Guarantee sale of 25 records on average to each machine given away four months from date customer has received machine.

                    "Standard Talking Machine Co.
                    "Signed F. P. Howard, Salesman."

The memorandum delivered to the defendants was a carbon duplicate, but it was claimed by the plaintiff that the agent did not send to him the original nor any copy thereof but only the plaintiff's duplicate of the printed contract. There being no evidence to the contrary, we must assume this as a fact. There was evidence that one of the defendants, Bridges, before payment for the first shipment of machines had been made, called upon the plaintiff's manager in Chicago, and was there informed that the plaintiff would not guarantee sales of records, that the agent had no authority to do so, that no more goods would be shipped until there was a definite understanding, and that an understanding was then reached that the plaintiff would not be held to guarantee the

sales of records.   The defendant Bridges claimed that he had no memory of such an agreement.   It is unquestioned, however, that after a part of the machines and records were delivered and a further installment was ordered, the plaintiff, being then informed of the memorandum, wrote to the defendants that he would not guarantee the sales of the records, that the agent had no such authority, that the order would be held up awaiting reply, "and if satisfactory to you you can wire us upon receipt of this communication and we will make prompt shipment of the order."   The defendants replied by wire, "Ship fifty machines and records as ordered at once."   At that time the defendants were compelled to have the remaining number of the machines to supply to customers to whom tickets had already been issued.   The remaining machines and records were then furnished.   A part of the agreed purchase price remaining unpaid, action was commenced for its recovery.   The defendants interposed a counterclaim for loss of profits upon sales of records which should have been made to meet the guaranty contained in the memorandum.

The cause was tried to the court without a jury.   The court found that the guaranty was a part of the contract; that defendants' loss of profits was $400; that there remained unpaid of the purchase price $410.   Judgment was rendered in favor of the plaintiff for $10 and costs.   The plaintiff has appealed.

The appellant contends that the memorandum of guaranty was never a part of the contract, because the agent had no authority to make it; that, when he appeared with a printed form of contract, he was without apparent authority to modify it, and the respondents were not warranted in believing that he had authority to make the memorandum of guaranty or warranty.   While an agent's authority can hardly be limited by the form of blanks he carries, that circumstance and the nature of the business should put a purchaser on inquiry.   The apparent scope of his authority was that of a

sales agent, and it is upon the powers implied by that rela-
tion that any sound decision of this case must rest. There is
much seeming confusion in the adjudicated cases upon this
question. There are decisions which hold that an agent upon
whom general authority to sell is conferred will be presumed
to have authority to warrant, unless the contrary appears.
*Talmage v. Bierhause*, 103 Ind. 270, 2 N. E. 716; *Woodford
v. McClenahan*, 9 Ill. 85; *Alpha Mills v. Watertown Engine
Co.*, 116 N. C. 797, 21 S. E. 917; *Dennis v. Ashley's Admr's*,
15 Mo. 315; *Milburn v. Belloni*, 34 Barb. 607; *Manley v.
Ackler*, 76 Hun 546; *Schuchardt v. Allens*, 1 Wall. 359.

But an examination of those cases shows that, while an-
nouncing a very broad rule, they in reality, when applied to
the given facts, go only to the extent that the implied power
of warranty by the agent upon which a purchaser may rely
extends to those things necessary to consummate the con-
tract and usually incident thereto and relating to the title,
quality or condition of the thing sold. In none of them was
the rule actually applied as authorizing warranties so extra-
ordinary as that here presented. A careful consideration of
the authorities cited in the briefs, as well as an independent
search, leads us to the conclusion that the rule laid down in
31 Cyc. as the one supported by the more numerous and
more recent decisions is also the one in consonance with the
better reason. It is as follows:

"The rule which is supported by the more numerous and
more recent decisions is that if in the sale of that kind or
class of goods which the agent is empowered to sell it is
usual in the market to give a warranty, the agent may give
that warranty in order to effect a sale, and the law presumes
that he has such authority; and that if an agent with express
authority to sell has no actual authority to warrant, no au-
thority can be implied where the property is of a description
not usually sold with warranty. . . . The implied power
of an agent to warrant title and quality rests upon the ne-
cessity and propriety of such warranties in the sale of goods.
It is not therefore to be extended to other warranties of an
extraordinary sort, however impossible the agent may find it

to make a sale without giving such warranties." 31 Cyc.
1353, 1355, 1356.

The correct principle, briefly stated, is that an agent under
general employment to make sales is impliedly authorized to
employ only those means for the purpose usual to the busi-
ness, and that the purchaser cannot safely assume that he
has authority to make any extraordinary guaranty or war-
ranty, or one beyond the usage of the business in which the
agent is employed. *Upton v. Suffolk County Mills,* 11 Cush.
586, 59 Am. Dec. 163; *Wait v. Borne,* 123 N. Y. 592, 25 N.
E. 1053; *Bierman v. City Mills Co.,* 10 Misc. Rep. 140, 30 N.
Y. Supp. 929; *Hayner & Co. v. Churchill,* 29 Mo. App. 676;
*Palmer v. Hatch,* 46 Mo. 585; *Reese v. Bates,* 94 Va. 321,
26 S. E. 865; *Waupaca Elec. Light & R. Co. v. Milwaukee
Elec. R. & Light Co.,* 112 Wis. 469, 88 N. W. 308; *Troy
Grocery Co. v. Potter & Wrightington,* 139 Ala. 359, 36
South. 12; *Anderson v. Bruner,* 112 Mass. 14.

The rule thus stated appeals to us as the one best calcu-
lated to preserve that just balance which the law is intended
to maintain between a reasonable protection of the principal
from the unauthorized acts of his agent, and a reasonable
protection of the purchaser from an unwarranted repudia-
tion by the principal of the acts of the agent. We have been
cited to no authority, and a careful search has revealed
none, in which it has ever been held that an agent employed
to make sales at wholesale has an implied authority not only
to warrant the quality of the thing sold but also to guarantee
that the purchaser will make sales thereof at retail in any
particular amount or at any given profit. A more extraor-
dinary guaranty can hardly be imagined. We can conceive
of no sound principle upon which such a holding could rest.
There was no evidence of any prevailing custom in the busi-
ness of selling talking machines which would warrant an as-
sumption on the purchaser's part that the guaranty was
authorized. The extraordinary nature of the guaranty made
proof of such custom essential to a recovery upon the guar-

anty in the absence of any showing of an express authority. So far as disclosed, there was no such custom. As has been said in a similar case:

"Usages of trade are not recognizable, unless they have the essential elements of certainty, notoriety, and continuity, bringing themselves home to the knowledge of those who are concerned in the trade or business to which they may pertain. The courts adhere strictly to this principle, as essential to a fair administration of justice. If it were departed from, uncertainty, insecurity in the transaction of business, and injustice would result. Parties could not know what were their rights or duties, if they were to be determined by loose evidence of some merely local, indefinite and partial usage." *Herring, Farrell & Sherman v. Skaggs*, 73 Ala. 446, 454.

See, also, *Upton v. Suffolk County Mills, supra.*

The respondents argue that, since the guaranty induced the contract, there was no contract if the guaranty be held void. It is manifest that, since the respondents had no right to rely upon the guaranty made by the agent, they cannot be heard to say that they did so rely. In the absence of a ratification by the appellant, they can base no rights either of an attack or defense upon the guaranty. There is no question that, if a principal elect to ratify a contract which the agent was not authorized to make, he must ratify the whole of it. If he ratifies the contract, he ratifies the warranties. But in this case there was no such ratification. The record shows that the appellant pointedly repudiated the guaranty as soon as he learned of it, and refused to further proceed with the contract if the guaranty was insisted upon. The evidence shows an acquiescence by the respondents in that repudiation. They accepted the performance of the contract without an affirmance of the guaranty. When the appellant wrote them to the effect that no further shipment would be made so long as the guaranty was claimed, the respondents answered authorizing the shipment as requested by the letter, thus plainly waiving the guaranty and affirm-

ing the contract without it. It can make no difference that they then had made arrangements to give away the whole number of machines. That arrangement had been made by them, not in reliance upon any act of the appellant indicating a ratification of the guaranty, but in sole reliance upon the guaranty of the agent which, as we have seen, was of so extraordinary a character that they had no right to assume his authority to make it. To hold, as contended by counsel, that the appellant, without knowledge or ratification, should be estopped to question the guaranty because the respondents had placed themselves in a position where they must have the machines in reliance upon the guaranty, would be to hold that the principal would be bound in almost every instance by the unauthorized acts of the agent however palpably beyond the scope of his employment. It would be, in effect, to say that, though in law the purchaser had no right to rely upon a guaranty on its face beyond the scope of the agent's employment, yet if he does so rely to his injury the principal will be bound. The paradox is too plain to require further comment.

The court was in error in sustaining the counterclaim. The finding that there was a balance of $410 due upon the purchase price of the machines was not excepted to by either party. The cause is therefore remanded with direction to modify the judgment in favor of the plaintiff, making it for the sum of $410 and costs.

DUNBAR, C. J., CROW, MORRIS, and CHADWICK, JJ., concur.