[No. 21654.   Department One.   May 1, 1929.]

A. LESCHEN & SONS ROPE COMPANY, *Appellant*, v. CASE SHINGLE & LUMBER COMPANY et al., *Respondents.*[1]

*John J. Langenbach (Wm. B. Layton* and *E. A. Boyrie,* of counsel), for appellant.

*Welsh & Welsh,* for respondents.

[1]Reported in 276 Pac. 892.

HOLCOMB, J.—Appellant sued respondents to recover upon a promissory note dated January 14, 1924, in the sum of $2,186.04, together with interest, attorney's fees and costs. The complaint was in the usual form of such actions.

Respondent Pacific Cedar Company, by answer, admitted the execution and delivery of the note as alleged, but put in issue all the other allegations of the complaint.

Respondent Case Shingle & Lumber Company, by answer, admitted the execution and delivery of the note as alleged, denied that it was given for a valuable, or any, consideration, denied that no payments had been made thereon and, by affirmative answer and cross-complaint, alleged, in substance, that it had been, for many years prior to March, April and May, 1923, engaged in operating shingle mills and logging camps and using skidders whereby logs were taken from the woods by means of a wire cable; that, during the months of March, April and May, 1923, it purchased from appellant, through its agent, wire rope at the agreed price of $16,201.02, and that appellant, through its agent, represented and guaranteed the rope so purchased to be as good quality as other wire rope in use on the Pacific coast and guaranteed that it was more than sufficient to perform the work which it was intended to perform; that, believing the representations and relying thereon, it received the rope, placed it on its skidders, commenced logging with the same and paid appellant therefor the sum of $14,014.98 in cash, and executed and delivered the promissory note described in the complaint; that the wire rope so purchased by it was of no value whatever, was weak, decayed and rotten, would not stand the strain required and, by using it, respondent's camps were constantly shut down, and, during the time such rope was in use,

the camps did not produce one-half the amount of logs that should have been produced if the rope had been as represented by appellant; that, by reason of such defective rope, this respondent was damaged in the sum of $14,014.98, being the amount paid to appellant in cash, and, in addition thereto was also damaged in the sum of $10,000 by reason of having used or attempted to use the defective rope. Respondent Case Shingle & Lumber Company therefore prayed that appellant take nothing, and that respondent have and recover the sum of $24,014.98, etc.

The affirmative allegations of respondent's answer and cross-complaint were put in issue by reply.

Upon these issues, the case was tried to the court and a jury, a verdict for $5,000 damages awarded by the jury in favor of respondents, which the court refused to disturb upon a motion for a new trial being interposed, and entered judgment upon the verdict. This appeal results.

As errors appellant complains:

(1) In refusing to allow appellant to show what guaranties and warranties attached to the manufacture of its wire rope.

(2) In refusing to allow the Pacific coast manager of appellant, the immediate superior officer of the agent making the sale, to show the actual limitations of such agent's authority to make a representation, warranty or guaranty such as was alleged to have been made to respondent Case Company.

(3) In refusing to allow the offer of proof by appellant as to the limitations and extent of the agent's authority in such a sale as in the case at bar.

(4) In overruling the motion of appellant for a new trial.

(5) In granting respondent a judgment on the verdict of the jury.

It was admitted at the trial that Pacific Cedar Company had succeeded to all the rights and assumed the liabilities of the Case Shingle & Lumber Company.

The Case Shingle & Lumber Company was, for many years prior to 1923, engaged extensively in logging with donkey engines, and, during the early part of 1923, was changing its method of logging from donkey engines to the skidder type of logging, and was about to purchase two skidders to be used in its camps. The Zimmerman-Wells-Brown Co. was a general agency engaged in the sale of logging machinery, equipment and wire rope through its Portland office, was agent for a skidder and was, and for twenty-three years had been, the general agent of appellant, handling wire rope manufactured by it in St. Louis. Appellant furnished to this agent, who delivered it to respondent prior to the ordering of the wire rope, a catalog issued by appellant, numbered 35. Certain statements and representations incorporated in that catalog are quoted as follows:

"How to Order Wire Rope. If possible, state your requirements by writing to the nearest branch or agency, or to the home office, in order that recommendation may be made covering the use of a rope best suited to your needs. Years of experience and years of study of varying conditions of service make it possible for us to be of assistance in this connection.

"Patent Flattened Strand Hercules Wire Rope. The highest type of wire rope construction, plus best quality of material, is represented by Patent Flattened Strand Hercules Wire Rope.

"This combination of material and construction produces the supreme product of rope making. The construction is simple, but practicable. The material combines strength, elasticity, toughness and flexibility in correct proportions for service and durability.

"Patent Flattened Strand Hercules Wire Rope was developed by this company to meet demands created

by various uses which could not be satisfactorily filled by rope of the ordinary type and construction.

"It is a wire rope unequaled in strength by any other rope of the same size for the same purpose. It is a safe rope for hazardous work, and its lasting qualities eliminate the frequent changing of wornout rope, thereby affording a great saving.

"The specific function of this very exceptional wire rope is, therefore, to provide maximum economy, safety and service under excessively destructive working conditions."

"LOGGING WITH WIRE ROPE. Methods of logging as logging is done today, vary considerably, according to the region and the attendant conditions. In all of them wire rope is indispensable. The work is in all cases severe—and the demands made upon the rope generally excessive.

"In all the years of logging with wire rope in every section of timber country and under all of the various conditions, the Hercules Red Strand wire rope has held place as the most thoroughly efficient logging rope manufactured. It possesses in the greatest measure all the essentials for this class of service."

One page closes with "WE CONSTRUCT THE ROPE TO FIT THE CONDITIONS."

Zimmerman-Wells-Brown Co. was represented by Mr. Zimmerman, the head of the concern (now dead), and a salesman, one Geho. They called on the officers of the Case Company, and Zimmerman, at least, went to the camps then operated by the Case Company, went over the ground carefully and selected the rope to be used on the skidders which the Case Company was then purchasing.

Zimmerman, or his company, also sold to the Case Company a skidder known and referred to in the testimony as the Washington skidder. The size and kind of wire rope to be used on the skidders was left entirely to Zimmerman, to be determined by him; and he alone, without any aid or advice from respondents or any

of their officers or agents, selected the kind and size of all wire rope to completely equip both skidders.

The order was placed in March, 1923, and the equipment arrived some time later. At the time Zimmerman took the order, he orally guaranteed the wire rope to be as good, if not better, than anything in use on that date. This guaranty was made to several officers of the respondents, who relied thereon in making the purchase, amounting to over $16,000. Zimmerman had made similar oral guaranties to respondents on the purchase of other goods from other concerns, on which guaranties he had always made good in case of any complaint.

Respondents employed competent men, the best they could hire, in the operation of their logging work. Their average daily wage was $6.25 for fifty-five or sixty men. The lines purchased from appellant were placed on one skidder in June, and on the Washington skidder in August, 1923.

Correspondence produced at the trial shows that, within thirty to sixty days after the lines were placed in use, respondents made complaint to Zimmerman's company, and complaints were made frequently from that time until the lines were removed. In response to some of the complaints, the Pacific coast representative of appellant, one deVry, went to the camp and inspected the ropes. On November 4, 1923, the Case Company mailed to Zimmerman-Wells-Brown Co., at Portland, samples of the rope showing it to be defective. No action was taken by appellant, and no report made on the condition of the samples sent, until October 11, 1924, or eleven months later, at which time appellant wrote the Case Company in part:

"Inasmuch as the rope was all right in all respects, and we should not be held responsible for the operation of same and declined to entertain your claim."

The Case Company, prior to the use of the rope in question, had successfully operated its camps at a profit, but after trying to use the wire rope purchased from appellant, its camps were shut down practically half of the time because of the defective line, which constantly broke because of inferior quality and workmanship. This is further evidenced by the fact that the one-inch line, manufactured by appellant, was constantly breaking, while a seven-eighths-inch line, manufactured by another factory, did not break, although the two lines were fastened together and under exactly the same strain.

Under the evidence produced by respondents, the Case Company was damaged in the sum of $15,000 for loss of wages alone. The jury, however, awarded only $5,000, in addition to the amount of the note and interest, which appellant did not recover.

Appellant's principal contentions are that the court wrongfully admitted the evidence of respondents as to the oral warranty of the agent Zimmerman of the quality of the wire rope purchased, and that the court excluded any testimony on the part of appellant showing the extent and limitations of the agent's authority.

Appellant relies chiefly upon the decision of this court in *Johns v. Jaycox,* 67 Wash. 403, 121 Pac. 854, Ann. Cas. 1913D 471, 39 L. R. A. (N. S.) 1151, in which we held that a selling agent, under a general employment to make sales, is impliedly authorized to employ only those means for the purpose usual in the business; that the purchaser is not authorized to assume that the agent is authorized to make any extraordinary warranty or one beyond the uses of the business in which the agent is employed; citing to the same effect, 21 R. C. L. 866, 2 C. J. 601, 24 R. C. L. 408 to 411.

The case and texts cited to sustain this point are not applicable. In the *Johns* case, *supra,* the agent

making the sales went far beyond any usual and customary practice in making such sales, and attempted to make an extraordinary guaranty, the nature of which is readily perceived by examining the opinion.

This court, in line with almost universal authority, declined to uphold such an extraordinary guaranty as within the implied power to warrant of a selling agent.

In the case at bar, the agent of appellant carried along with him, and delivered to the purchaser, appellant's own printed matter containing almost the same guaranty that respondent proved was made to it as to the quality of the wire rope and its ability to stand use, except that the general agent went somewhat further, according to the undisputed evidence, and guaranteed the wire rope to be the kind of rope necessary for respondent's use.

The affirmations contained in the catalog constituted express warranties, when the purchaser had knowledge thereof and acted thereon. 24 R. C. L. 164.

We consider it immaterial whether the guaranty be that shown by the statements and representations made in the catalog of appellant, or those made by Zimmerman. They were, to all intents and purposes, the same, and induced the purchase. The implied power of Zimmerman to make such guaranty as an agent of appellant is indisputable. He had implied power to do as much as was necessary to make a sale of the equipment desired by respondent under the circumstances shown.

This is in harmony with our ruling in the *Johns* case, *supra,* and with the text of 2 C. J. 604. See, also, cases cited in case note to *Johns v. Jaycox, supra,* Ann. Cas. 1913D 471 *et seq; Case Threshing Machine Co. v. McKinnon,* 82 Minn. 75, 84 N. W. 646; *Conkling v. Standard Oil Co.,* 138 Iowa 596, 116 N. W. 822.

Upon the point that it was error to reject tes-

timony on behalf of appellant as to the authority of the agent who made the sale to make the warranty, appellant did not offer to prove that the Case Company had any knowledge of any restrictions or limitations upon the authority of the agent.

Appellant is seeking to enforce the contract, so far as it inures to its benefit, and repudiate that part which imposes on it a burden.

Respondent had the right to assume authority, upon the part of the agent making the sale, to make the warranty, unless respondent had notice of some limitation upon the authority of the agent in respect thereto. An offer to prove a limitation upon his authority, without an offer to prove knowledge on the part of respondent, would be immaterial and incompetent, and the objection thereto was properly sustained. Nor could appellant enforce the contract and at the same time repudiate the warranty. *Loomis Milling Co. v. Vawter,* 8 Kan. App. 437, 57 Pac. 43, and texts cited. To the same effect see *Churchill v. Palmer,* 115 Mass. 310.

Some cases from this court, while not bearing directly upon this point, in general, sustain the proposition that it is permissible to prove that there was an oral, special warranty made at the time for the purpose of inducing the sale of the article. *Gleason Co. v. Carman,* 109 Wash. 536, 187 Pac. 329; *Little Co. v. Fynboh,* 120 Wash. 595, 207 Pac. 1064, 211 Pac. 766; *Long v. Five-Hundred Co.,* 123 Wash. 347, 212 Pac. 559.

We conclude that the court did not err in receiving the testimony complained of, and in rejecting the evidence offered by appellant.

A question of some moment and difficulty is suggested by appellant, but not argued at much length by respondent, as to the effect of making payments by

respondent after the discovery of the defects in the wire rope, it being admitted that some such payments and the note now sued upon were made and given after the delivery of the rope and discovery of its defects. *Maltbie v. Gadd,* 101 Wash. 483, 172 Pac. 557, is quoted and relied upon to the effect that payments made over a considerable period of time, together with a note and the renewal thereof, constitute a waiver of the breach of warranty. That was a case where an express warranty had been given that a pump, sold on time, would deliver a certain quantity of water, which the pump failed to do. Only a small part of the purchase price was paid at the time of the contract, and payments were made on the purchase price after the failure of the pump to fulfill the warranty was well known, and, four years later, the note for the balance of the purchase price not having been paid, appellants paid a large portion of the note and gave a renewal note for the remainder with a mortgage on the same property. There can be no question in such case as that of waiver of the breach.

In the present case, had all the purchase price been paid in cash at the time of delivery of the wire rope, a breach of warranty of quality would survive acceptance of the article and be the basis for a recovery of damages for breach of warranty. *Hausken v. Hodson-Feenaughty Co.,* 109 Wash. 606, 187 Pac. 319.

In this case, respondent frequently complained of the defective condition of the wire rope. It promptly attempted to have an adjustment made of its claim through Zimmerman-Wells-Brown Co., which attempts were ignored. Respondents' officers also had reason to believe, and did believe, that, when equipment was found to be unsatisfactory and defective which had been purchased through Zimmerman-Wells-Brown Co., adjustments would be made to their satisfaction. In

this instance Zimmerman failed to justify their faith in him, doubtless because of the refusal of appellant to make good.

Under all the circumstances, we conclude that there was no waiver of the breach of warranty on the part of respondents, and that the trial court did not err in refusing to grant a new trial.

The judgment is therefore affirmed.

MITCHELL, C. J., TOLMAN, FULLERTON, and BEALS, JJ., concur.