Fatman *et al. v.* Leet *et al.*

*J. Buchanan,* for appellee.

———◆———

## FATMAN ET AL. *v.* LEET ET AL.

AGENT. — *General.—Special. — Limitation of Authority. — Notice.*—Where a firm commissioned S. to purchase, not a particular lot or quantity of tobacco merely, but to purchase generally Kentucky tobacco, of the crop grown in the year 1866, at Oak Lawn and vicinity, on their account and for their benefit, and to receive the same, have it assorted, etc., prized, and put in hogsheads and placed on the bank of the river, ready for shipment, and the agreement between the firm and said agent stipulated that he should purchase only for cash, and should not give the firm signature to any obligation;

*Held,* that where the agent did purchase on credit, and gave the receipt of the firm, and it did not appear that the seller had any notice of the want of authority in the agent to purchase on credit, the firm would be liable, although they had settled with the agent, supposing he had obeyed his instructions, and paid for the tobacco with money furnished by them for that purpose. The authority to purchase, unless restricted, carried with it the authority to purchase on time and on the credit of the principals. The firm, by making S. their agent to purchase, and not making known the terms upon which he was to purchase, justified those dealing with him in believing he was authorized to purchase on credit. The fact that this restriction on their agent to purchase for cash only was known in the neighborhood, unless brought to the knowledge of the seller, would not avail the firm.

PRACTICE.—*Demurrer.—Several Plaintiffs.*—If two or more persons unite in an action, a cause of action must be stated in favor of all of them, or a demurrer for want of sufficient facts will be sustained.

APPEAL from the Vanderburg Circuit Court.

WORDEN, J.—In this case judgment was rendered in favor of Oberdorfer against Lewis Fatman and others, but errors are assigned, by inadvertence we suppose, in the names of

Leet and Oberdorfer as appellants, against Lewis Fatman and others as appellees. As it was evidently intended to make Fatman and others appellants, we shall regard them as such, and treat the assignment of errors accordingly.

The action was brought by James Z. Leet and Simon Oberdorfer against Lewis Fatman, and several others who were the heirs-at-law of Joseph T. Fatman, deceased. The complaint alleges, that in July, 1867, Lewis Fatman and Joseph T. Fatman, under their firm name of Fatman & Co., purchased from the plaintiff Leet a quantity of tobacco, specifying the quantity, amounting in value, at the stipulated price, to the sum of five hundred and forty-six dollars and eighty-two cents; that receipts were executed for the tobacco as delivered, which are set out, and were signed, "Fatman & Co., by James Steelman;" that after the sale, Joseph T. Fatman died intestate, leaving a thousand dollars each to his said heirs, and that he has no personal representatives; that Leet assigned the claim to Oberdorfer, which remains due and unpaid. Prayer that Oberdorfer recover, etc.

The defendants answered in six paragraphs. The first was the general denial; fourth, payment. The third was withdrawn. Demurrers were sustained to the second, fifth, and sixth. Reply, in denial of the fourth. The issue of fact thus joined was tried by the court, who found for the plaintiff Oberdorfer, against the defendants, for the amount of the claim, and rendered judgment accordingly.

Errors are assigned upon the ruling of the court in sustaining the demurrers to the second, fifth, and sixth paragraphs of the answer, and also in overruling a motion for a new trial. The record does not show that any motion for a new trial was made at all.

The paragraphs of the answer, to which demurrers were sustained, were designed to set up substantially the same defence; and as the sixth is, perhaps, the fullest and most complete, we need only notice that.

Perhaps, by condensing the paragraph, we might, in some measure, impair its force; hence we set it out in full:

"For a further answer to the plaintiffs' complaint herein, the defendants say that on the — day of ——, 1867, the firm of Fatman & Co. appointed one James R. Steelman their special agent to purchase tobacco under certain limitations and restrictions, which are fully stated in a certain instrument in writing executed by Fatman & Co. and the said Steelman, and delivered to said Steelman as his authority, a copy of which is filed with the second paragraph of the answer herein, and referred to as a part of this additional answer. And defendants say that said Steelman had no other authority as their agent except as conferred in said instrument in writing; neither did they, in any way, hold out to the community that the said Steelman was authorized to act for them otherwise than as provided in said instrument. And defendants say that the plaintiff, James Z. Leet, sold the tobacco mentioned in the complaint, to said Steelman as the agent of said Fatman & Co. as aforesaid, and that the said Steelman, in violation of his authority as agent, which provided, that he should purchase for cash only, pledged the credit of the said Fatman & Co. to the said Leet for said tobacco, agreeing, in consideration of the delivery of said tobacco, that the said Fatman & Co. would, at a future day, pay the said Leet therefor, and the said Leet thereupon delivered said tobacco to said Steelman without receiving payment therefor from the said Steelman. And the defendants say that at all times they furnished the said Steelman with the funds wherewith to pay for tobacco purchased by him as their agent as aforesaid, and that at the time of the purchase of said tobacco from said Leet, the said Steelman had in his possession funds of the said Fatman & Co. with which to pay therefor.

"And the said defendants further say that the firm of Fatman & Co. had been doing business in the purchase of tobacco, by and through their agents, in the neighborhood where the said James Z. Leet resided for several years, and had so purchased large quantities of tobacco from a large number of persons, and that it was invariably their habit and

custom to restrict their said agents to purchase for cash, which was well known in said neighborhood.

"And afterward, to wit, on the —— day of ——, 1867, the said Fatman & Co. settled their accounts with the said Steelman, as their agent as aforesaid, and allowed him in said settlement, as a credit, the full amount agreed to be paid for the tobacco purchased from the said Leet, to wit, the sum of five hundred and forty-six dollars and eighty-two cents, the said Steelman having exhibited to said Fatman & Co. what purported to be a receipt signed by the said Leet for said amount of money as the purchase-money for said tobacco."

The written instrument referred to in the foregoing paragraph is as follows:

"Articles of agreement made and entered into this 5th day of December, 1866, by and between Fatman & Co., of the city, county, and State of New York, parties of the first part, and James R. Steelman, of Oak Lawn, Davis county, and State of Kentucky, of the second part, witnesseth:

" 1. The same James R. Steelman, party of the second part, hereby agrees and binds himself to buy Kentucky tobacco, of the crop grown in the year 1866, at Oak Lawn, Kentucky, and immediate vicinity, for the benefit and account of Fatman & Co., parties of the first part, and he is to be governed by them or their authorized agents, as to the quality, quantity, manner of buying, and prices he shall pay for all purchases, and in all matters appertaining to the general conduct of the business. He also agrees to receive all such tobacco purchased, compelling a strict compliance with contracts, and, if necessary, have same tobacco hung up and redried, and when in proper condition, have same carefully and neatly selected, each quality, color, and size to itself; after which said tobacco is to be prized in good merchantable order, and in good substantial hogsheads, and to deliver same ready for shipment on the bank of Green River, at Old Crossing, Kentucky.

" 2. The said James R. Steelman, party of the second part, agrees to stop buying immediately when so ordered by

Fatman & Co., parties of the first part, and he makes it a part of this agreement to take written contracts for all the different crops of tobacco he may purchase, said contracts to be taken on blanks to be furnished by Fatman & Co., parties of the first part, and to take receipts for all moneys paid out for said tobacco, and deliver up such vouchers at the close of the tobacco prizing season to Fatman & Co., parties of the first part; and it is understood that no claim on account of tobacco, or for any expenditure whatever, will be allowed on settlement, unless a proper voucher is exhibited. He further agrees to keep a regular set of books, showing planters' names, number of pounds tobacco received and paid for, and the various prices paid for same, which book is to be ready at all times for inspection and examination by Fatman & Co., parties of the first part, or their authorized agents. It is also understood that all purchases of tobacco, or materials and labor, are to be made exclusively for cash; and the said James R. Steelman, party of the second part, is not authorized to issue notes or due bills in the name of Fatman & Co., for any purpose whatever; and he further agrees to receive all tobacco in such manner that an unusual loss in weight shall not accrue, and agrees to be responsible for, and will refund, any amount in excess of reasonable loss; said loss not to exceed one per cent. of the net weight.

" 3. It is distinctly understood between the parties to this agreement, that it covers all tobacco bought, or caused to be bought, directly or indirectly, during the tobacco season of 1866–67, by the said James R. Steelman, party of the second part, if in accordance with instructions received from Fatman & Co., parties of the first part, or their authorized agents; and the said Fatman & Co., parties of the first part, reserve the right to reject any crop of tobacco that is not purchased in accordance with instructions received from them, either as regards quality or price.

" 4. Fatman & Co., parties of the first part, agree to furnish all necessary funds to carry on the business, at such

times and in such sums as the necessity of the business shall require; and it is further understood that all moneys so furnished shall be applied exclusively to the purposes herein stated.

"5. Fatman & Co., parties of the first part, agree to pay to James R. Steelman, party of the second part, one dollar for each and every hundred pounds of tobacco so bought, received, prized, and delivered in accordance with all the provisions of this agreement, as a remuneration for his services and expenditures; and it is understood by both parties that the said one dollar per hundred pounds covers all claims for services and expenditures, of any nature whatever, on any lot of tobacco purchased under this agreement. Given under our hands," etc.

Do the facts alleged preclude a recovery? This question must be answered by a reference to the authority conferred by Fatman & Co. on Steelman, their agent. Agencies are classified as general and special, or particular. We quote the following passages on this subject, from 1 Parsons Con. 40:

"A general agent is one authorized to transact all his principal's business, or all his business of some particular kind. A particular agent is one authorized to do one or two special things. But it is not always easy to find a precise rule which determines with certainty between these two kinds of agency.

"A manufacturing corporation may authorize A. to purchase all their cotton, and he is then their general agent for this special purpose, or to purchase all the cotton they may have occasion to buy in New Orleans, and then he may be called their general agent for this special purpose in that place. Or to purchase the cargoes that shall come from such a plantation, or shall arrive in such a ship or ships, or five hundred bales of cotton, and then he should rather be regarded as their particular agent for this particular transaction.

"The importance of the distinction lies in the rule, that if a particular agent exceed his authority, the principal is not bound; but if a general agent exceed his authority, the

principal is bound, provided the agent acted within the ordinary and usual scope of the business he was authorized to transact, and the party dealing with the agent did not know that he exceeded his authority."

Tested by the descriptions thus given of general and special agencies, it would seem that Steelman was the general agent of Fatman & Co., for the purchase of tobacco at the price mentioned. Fatman & Co. were dealers in tobacco, having been engaged, as is alleged, in the business of purchasing the same, in the neighborhood where Leet resided, for several years. They commissioned Steelman to purchase, not a particular lot or quantity of tobacco merely, but to purchase, generally, Kentucky tobacco, of the crop grown in the year 1866, at Oak Lawn and vicinity, on their account and for their benefit. He was not only to purchase the tobacco, but was to receive the same, have it assorted, etc., prized, and put in hogsheads and placed on the bank of the river, ready for shipment. He was to be governed in all matters appertaining to the general conduct of the business, by Fatman & Co., or their agents. He, doubtless, violated his agreement with his principals, as well as exceeded his authority, in purchasing the tobacco on time, and pledging the credit of his principals therefor. But as it does not appear that Leet had any notice of the stipulation in the agreement, that Steelman was to purchase for cash only, and not on the credit of his principals, he cannot be held bound by it. He is, therefore, entitled to recover, on the theory of the law above stated.

But the question admits of some further consideration. The author already quoted from proceeds, page 43: "We think the distinction between a general agent and a special agent useful, and sufficiently definite for practical purposes, although it may have been pressed too far, and relied upon too much in determining the responsibility of a principal for the acts of an agent. It may indeed be said, that every agency is, under one aspect, special, and under another, general. No agent has authority to be in all respects and for

all purposes, an *alter ego* of his principal, binding him by whatever the agent may do in reference to any subject whatever; and therefore the agency must be special so far as it is limited by place, or time, or the extent or character of the work to be done. On the other hand, every agency must be so far general, that it must cover not merely the precise thing to be done, but whatever usually and rationally belongs to the doing of it.

"Of late years, courts seem more disposed to regard this distinction and the rules founded upon it as altogether subordinate to that principle which may be called the foundation of the law of agency; namely, that a principal is responsible, either, when he has given to an agent sufficient authority, or, when he justifies a party dealing with his agent in believing that he has given to this agent this authority." See, also, *Mechanics' Bank* v. *New York and New Haven R. R. Co.*, 13 N. Y. 599.

Did Fatman & Co. justify Leet in believing that they had given Steelman authority to purchase tobacco on their credit?

They were dealers in tobacco, and they commissioned Steelman to purchase for them, as above stated. The agreement between Fatman & Co. and Steelman was evidently not intended for the public eye, nor does it appear to have been made public. The main object of the agreement seems to have been to regulate and determine the rights of the parties thereto, as between themselves. The stipulation in the agreement that the tobacco was to be purchased by the agent for cash only, and not on credit, can have no greater force as against one selling tobacco to the agent for his principals, than private instructions to the agent would have. Such private instructions could not vary the rights which a person dealing with the agent would otherwise have. We quote, on this point, a paragraph from the opinion of the court in *Hatch* v. *Taylor*, 10 N. H. 538: "No man is at liberty to send another into the market, to buy or sell for him, as his agent, with secret instructions as to the manner in which he shall execute his agency, which are not to be communicated to

those with whom he is to deal; and then, when his agent has deviated from those instructions, to say that he was a special agent—that the instructions were limitations upon his authority—and that those with whom he dealt, in the matter of his agency, acted at their peril, because they were bound to inquire, where inquiry would have been fruitless, and to ascertain that of which they were to have no knowledge. It would render dealing with a special agent a matter of great hazard."

Steelman was the authorized and recognized agent of Fatman & Co. in the purchase of the tobacco, and we think the authority to purchase, unless restricted, carried with it the authority to purchase on time, and on the credit of the principals. Fatman & Co., by making Steelman their agent for the purchase of tobacco, as above stated, and by not making known the terms upon which he was to purchase, justified those selling tobacco to the agent in believing that he was authorized to purchase on credit as well as for ready cash.

It appears, by the answer, that in the previous purchases of tobacco by Fatman & Co., it was their invariable custom to restrict their agents to purchases for cash only, and that this was well known in the neighborhood. This was not notice to Leet of the restrictions upon the new agent, Steelman. Leet does not appear to have ever before sold any tobacco to the agents of Fatman & Co., nor to have lived in the neighborhood at the time of the previous purchases, nor to have been otherwise cognizant of the previous custom alleged. Beside this, the exigencies of trade and commerce sometimes make it quite convenient for those whose purchases are usually made for cash to have the benefit of credit.

Under any aspect in which the case can be viewed, we are of opinion that the matter set up cannot bar the action. The fact that Fatman & Co. subsequently settled with their agent, and allowed him credit for the money supposed to have been paid by him for the tobacco in question, cannot affect Leet. Fatman & Co. placed Steelman in a situation that

enabled him to perpetrate the fraud, and they must bear the loss. The ruling on the demurrer was right, and must be sustained.

No question is made as to the right to maintain the action as against the heirs of the deceased partner, and we make none.

It is objected, however, that the demurrer to the answer reaches back to the complaint, and that the complaint is bad in not showing any cause of action in favor of Leet, he having assigned the cause of action to Oberdorfer. Leet, if a party at all, should have been made a defendant, to answer to the assignment of the cause of action. 2 G. & H. 38, sec. 6. No demurrer was filed, however, because he was not made a defendant, hence no objection can be now made on that ground. *Musselman* v. *Kent*, 33 Ind. 452.

If Leet is to be regarded as a plaintiff, and if a demurrer had been filed to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, it should have been sustained, because if two or more persons unite in an action, a cause of action must be stated in favor of all of them. But we doubt whether Leet should be regarded as plaintiff at all. He is named as such in the complaint, but no relief was asked in his favor. Judgment was prayed only in favor of Oberdorfer, and it was rendered accordingly. However this may be, we think the irregularity in naming Leet as a plaintiff instead of defendant, no objection being made thereto in the court below, cannot, and ought not, to have the effect of reversing the judgment, the cause having been tried on its merits and fairly determined in the court below. 2 G. & H. 278, sec. 580.

The judgment is affirmed, with costs.

*B. Hynes*, for appellants.

*A. Dyer*, for appellees.