· HON. JAMES BARRETT,  
HON. HOMER E. ROYCE, } ASSISTANT JUDGES.  
.HON. H. HENRY POWERS,

———

## DEMING *v.* CHASE.

*Principal and Agent. Evidence. Reproduction of Testimony of Deceased Witness.*

Plaintiff had a horse in his possession belonging to defendant that was sick, and wrote defendant that the horse was not well, and asked how much money it would take to buy it. Defendant replied by letter that he would take $1500 for the horse just as it was, and that if plaintiff bought it he must take it as it was, and that he might trade with B., *and whatever B. did would be all right.* Plaintiff bought the horse of B. at the price named, and B. warranted it sound except as to a cold. *Held,* that defendant was bound by the warranty.

*Held,* also, B. having authority to warrant, that his admissions and declarations made while negotiating the bargain, and tending to show that he did warrant, were admissible against the defendant.

Defendant had legal notice of the commencement and pendency of suit, but did not appear at the first term, and judgment by default was entered, and the damages assessed by the clerk under a rule of court, without notice to or appearance by defendant. At a subsequent term, on motion of defendant and cause shown, the default was stricken off and the case brought forward for trial. *Held*, that plaintiff might, on trial of the merits, reproduce the testimony of a witness before the clerk on assessment of damages, that had since deceased.

ASSUMPSIT for breach of warranty of a horse. Plea, the general issue, and trial by jury, September Term, 1875, WHEELER, J., presiding.

Plaintiff had a horse in his possession belonging to defendant that was sick. Plaintiff, who lived in Brandon, on September 14th, wrote defendant, who lived in Boston, informing him that the horse was not well, and asking him how much much money it would take to buy him. The defendant replied by letter that he would take $1500 for the horse just as he then was, and as the plaintiff had written him that the horse was sick, if plaintiff bought him he must take him as he was, and that he might trade with Barnard, by whom defendant sent the horse to plaintiff from Boston for purposes other than sale, and who thereafter had charge of him till he was sold as hereafter stated, and that anything Barnard would do would be all right. The plaintiff thereafter traded for the horse with Barnard at the plaintiff's stable in Brandon, at the price named, and paid him therefor.

Plaintiff's evidence tended to prove that Barnard, in making the sale, warranted the horse to be sound in every respect, except a slight cold, and that on the 12th day of October, 1873, the horse died at Stockbridge, while on his way from Brandon to attend the races at Bethel, with a disease of the lungs and heart that was of long standing.

Defendant's evidence tended to show that there was no warranty as alleged, and that the horse died with the colic, and had no disease of the heart and lungs other than a cold.

Plaintiff called one Rolfe as a witness, who testified, among other things, that he was at plaintiff's stable in Brandon, helping take care there, and heard Barnard and plaintiff talk about the trade. Defendant objected to his testifying what the conversation was. The court overruled the objection and admitted the evi-

dence, and the witness testified that he heard Barnard tell plaintiff that he would warrant the horse all right with the exception of a cold that he got on the cars or in the stable; that he heard it at two or three different times ; that Barnard said he wouldn't be afraid to warrant the horse sound and all right with the exception of a cold. To this the defendant excepted.

This case was entered in court at the September Term, 1874, and the defendant not appearing, was defaulted, and the damages were assessed by the clerk, under rules of court. The next March Term thereafter, the default was, upon the motion of the defendant and cause shown, stricken off, and the case brought forward. In assessing the damages without notice to or appearance by the defendant, one Scott, since deceased, was examined as a witness. The plaintiff offered to prove by the clerk before whom the damages were assessed, what Scott. swore to on said hearing, as evidence in the case on this trial, to which the defendant objected. The objection was overruled and the testimony admitted, to which the defendant excepted. The clerk then testified, without further special objection, to what Scott testified to before him. The testimony of the •clerk was objected to generally, but no special objection was made to any particular part thereof, and he was permitted to read his minutes of Scott's testimony, without any particular clause or portion thereof being designated as objectionable.

Defendant requested the court to charge the jury that if they found defendant wrote plaintiff that he would sell him the horse for $1500, but that if he bought him he must take him just as he then was, with the disease he had upon him, and that he might trade with Barnard, the defendant was not bound by what Barnard said as to the soundness of the horse, unless it appeared affirmatively that Barnard was specially authorized to make the warranty or representations in question. The court charged that the warranty must have been a part of the contract of sale ; that if plaintiff in buying the horse accepted the terms offered in the letter, without resorting to Barnard except to fix the terms of payment, there was no warranty, and defendant was entitled to a verdict ; but that defendant, by his letter, authorized plaintiff to

resort to Barnard as his agent about the trade, and if plaintiff did resort to Barnard as defendant's agent about it, and Barnard, as a part of the contract of sale, warranted the horse, the defendant was bound by the warranty the same as if he had made it himself. To this defendant excepted.

*Dunton & Veazey,* for defendant.

The leading question in this case is as to the construction to be put on the letter of defendant to plaintiff. The court below assumed that this letter authorized plaintiff to resort to Barnard as defendant's agent about the trade generally, not only as to terms of payment, &c., but to get a warranty of the horse. In this there was error.

Barnard was a special agent to negotiate the trade, subject to just the restrictions that the letter fairly imposed. The terms of the letter exclude the idea of a warranty, and of an intention to allow Barnard to warrant. It is an elementary principle of law, that a special agent to sell, restricted from warranting, cannot bind his principal by a warranty, although the restriction is not known to the buyer. Dunlap's Paley Agency, 203. This letter amounted to such restriction, and was written to the buyer, so that he had notice of the restriction. It is an old and settled rule, that if the person dealing with the agent, knew or had reason to suppose that his powers were limited, or had such notice as to put him on inquiry, he must run the risk of the principal's disavowing the act of the agent. *Stainer* v. *Tysen,* 3 Hill, 279; *Banorgee* v. *Hovey,* 5 Mass. 26. A particular or special agent is one authorized to do one or two special things. 5 Parsons Cont. (5th ed.) 40. Barnard clearly belonged to this class, as distinguished from a general agent, who is one authorized to transact all his principal's business, or all his business of some particular kind. If a special agent exceed his authority, the principal is not bound. *Admrs. of Shattuck* v. *Wilder,* 6 Vt. 334; *White* v. *Langdon,* 30 Vt. 602; *Goodrich* v. *Tracy,* 43 Vt. 320.

The most liberal rule upon the question of extent of authority in an agent to be found in any cases is that in *Helyear* v. *Hawke,* 5 Esp. 72, and *Alexander* v. *Gibson,* 2 Camp. 555, where it was

held that a servant entrusted to sell a horse may warrant unless forbidden. In the case at bar we insist that the agent was forbidden, and the plaintiff had notice of the interdiction.

It is doubtless true that a general authority to sell carries with it an authority to warrant, but this does not seem to be the rule in case of authority to effect a particular sale. 1 Smith Lead. Cas. (7th ed.) 347 ; *Fenn* v. *Harrison*, 3 Term, 760 ; *Pickering* v. *Busk*, 15 East, 38 ; *Gibson* v. *Colt*, 7 Johns. 390 ; *Nixon* v. *Hyserott*, 5 Johns. 58 ; *Coleman* v. *Riches*, 16 C. B. 104.

The question as to the admissibility of Rolfe's testimony, turns on the question of Barnard's authority to warrant, and on the question of time when he warranted, whether at the time of the trade or before. .Dunlap, 256, and notes.

The testimony of the clerk as to what Scott swore to on the assessment before him, was inadmissible, on the ground that there was no opportunity for cross-examination of Scott. *Warren* v. *Nichols*, 6 Met. 264 ; *Marsh* v. *Jones*, 24 Vt. 380, citing *Rex* v. *Paine*, 1 Ld. Raym. 729 ; s. c. 5 Mod. 163 ; s. c. 2 Salk. 281, 417.

*E. J. Ormsbee* and *A. A. Nicholson*, for plaintiff.

The first question presented by the bill of exceptions, is as to the admissibility of the evidence of the witness Rolfe.

As to this it need only be said that, defendant admitting that he referred plaintiff to Barnard, with the declaration that "he might trade with Barnard, and anything Barnard would do would be all right," makes Barnard's declarations to plaintiff in connection with the trade, proper evidence. The application of any rule excluding the evidence of Rolfe, would also exclude the testimony of plaintiff as to what took place between him and Barnard, although directly referred to Barnard by defendant, for the express purpose of making the trade for the horse.

The general proposition that the evidence of a deceased witness given on a former trial of the same cause between the same parties, is admissible and proper, will not be questioned or controverted. We assume that no possible objection is or can be made as to the channel through which the evidence of the deceased witness was reproduced or brought before the court. The clerk

was a co-ordinate branch of the same court before which the issue in controversy was pending. The testimony of Scott was given in the lawful, usual, and only recognized mode adopted or practiced under the rules of the court, and was originally given in this action, in a regular and necessary proceeding, and was pertinent and proper, and defendant had had due notice of the suit, and that he was not present at the time of the hearing was his own fault or misfortune. It is not necessary that there should have been an actual cross-examination of the witness by the objecting party. The most that is required is, an opportunity to cross-examine; and in this case, in contemplation of law, there was no want of an opportunity. To exclude the evidence of Scott for want of an actual cross-examination, would have the effect to punish the plaintiff for the fault or misfortune of the defendant, and to award to the defendant a premium for his own negligence and indifference. *Glass* v. *Beach*, 5 Vt. 172; 1 Greenl. Ev. 189, 190.

The remaining questions grow out of the charge, and the refusal to charge as requested. The condition imposed by defendant in his letter to plaintiff, is modified and enlarged by his declaration that " he might trade with Barnard, and anything that Barnard would do would be all right." The plaintiff was justified in the understanding that he fully recognized Barnard as his agent in every respect in negotiating the sale. *Gunnison* v. *Bancroft*, 11 Vt. 490. Defendant's language should be construed most strongly against himself. Chitty Cont. 95, 96. The case as stated shows undoubted authority in Barnard to sell the horse as the agent of defendant; and a general authority to an agent to sell, includes authority to warrant. *Backman* v. *Charlestown*, 40 N. H. 131; *Alexander* v. *Gibson*, 2 Camp. 555; *Fay & Bryant* v. *Richmond*, 43 Vt. 25.

The opinion of the court was delivered by

ROYCE, J. In determining the question as to whether the evidence of Rolfe was properly admitted, it becomes important to ascertain the construction which should be put upon the letter which was written by the defendant to the plaintiff in reply to the letter written by the plaintiff to him on the 14th of September.

The plaintiff, in the letter of the 14th, after informing the defendant that the horse was not well, asked him how much money it would take to buy the horse. The defendant replied that he would take $1500 for the horse just as he then was, and as the plaintiff had written him that the horse was sick, if he, plaintiff, bought him he must take him as he was, and that he might trade with Barnard, and anything Barnard would do would be all right. This letter contained a distinct, unequivocal offer, and if the plaintiff had accepted the offer, he would have been bound by its terms, and would have taken the horse with all defects. If the plaintiff did not choose to accept the offer, the letter gave him the right to trade with Barnard upon such terms as he and Barnard might agree upon, and gave the plaintiff to understand that anything that Barnard might do would be all right. This is substantially the construction which the court put upon the letter, and we think it is the correct construction. The plaintiff traded with Barnard for the horse, and for the purpose of making the sale, Barnard must be regarded as the agent of the plaintiff. It has been claimed that inasmuch as Barnard was only a special agent to make this particular sale, he had no authority to bind his principal by a warranty of the property sold. It is true that there is a distinction made between the authority of a general and a special agent in this particular. In *Finn* v. *Harrison*, 3 Term, 757, ASHURST, J., in speaking of this distinction, says that if a person keeping livery stables, and having a horse to sell, directed his servant not to warrant him, still the master would be liable on the warranty, because the servant was acting within the general scope of his authority, and the public cannot be supposed to be cognizant of any private conversation between the master and the servant; but if the owner of a horse were to send a stranger to a fair, with express directions not to warrant the horse, and the latter acted contrary to the orders, the purchaser could only have recourse to the person who actually sold the horse, because the servant was not acting within the scope of his employment. And in *Pickering* v. *Busk*, 15 East, it was held that if the servant of a horse-dealer, with express directions not to warrant, do warrant, the master is bound. But inasmuch as a power to do any act com-

prises a power to do all such subordinate acts as are merely incident or are necessary to effectuate the principal act in the best and most beneficial manner, it is necessary, even in regard to a special agent, if it be intended to exclude from his authority any circumstance which would otherwise fall within it, that it should be done by express direction. And in *Finn* v. *Harrison*, before cited, it was held that where a special agent was employed to negotiate a bill of exchange, and no express directions were given him not to indorse it, that the principal was bound by his indorsement. And in the cases cited where it is stated that, a special agent cannot bind his employer by a warranty in the sale of a horse, it is with this qualification, that he is *expressly directed not to warrant;* and if he give no directions respecting the warranty, he is bound by the warranty of the agent. *Helyear* v. *Hawke*, 5 Esp. 75; *Rungeint* v. *Ditchell*, 3 Esp. 65; *Alexander* v. *Gibson*, 2 Camp. 555.

Barnard having authority to sell the horse, and there being no evidence that he was directed not to warrant, the court were justified in holding that the power to sell gave him the right to warrant. And if the principal would avoid the warranty made by Barnard, it was incumbent on him to show that in authorizing Barnard to sell the horse, he directed him not to warrant him. Barnard having authority to make the warranty, his admissions and declarations which had a tendency to prove that he made the warranty, were admissible, and the testimony of Rolfe was admissible for that purpose. The declarations testified to by him were made by Barnard while he and the plaintiff were talking about the trade, and it is not necessary to the admissibility of such evidence, that the declarations should have been made at the time when the trade was consummated. If made while the negotiaton is proceeding, and with the intention and expectation upon the part of the party making them that the party to whom they are made will rely upon them, and he does rely upon them, they are admissible.

The exception taken to the reproduction of the testimony of the deceased witness Scott, cannot be sustained. The objection was a general one, and was to the competency of the evidence. The

only reason urged why the evidence should have been excluded is, because the defendant had no opportunity to cross-examine Scott. It is not claimed but that the defendant had legal notice of the commencement and pendency of the suit; and not appearing, he was defaulted, and the damages were assessed by the clerk under the rules of court, and it was the evidence of Scott which was given before the clerk upon such assessment, that was reproduced. The damages were assessed in the manner provided by s. 48, c. 30, of the Gen. Sts., and the rule of court referred to provides that the clerk shall assess all damages on judgments by default, unless otherwise ordered, giving reasonable notice when requested. The notice given to the defendant was all the notice that the law required, and gave him opportunity to appear and contest all questions that might be litigated, until the final completion of the judgment. The assessment of the damages was a judicial proceeding between the same parties, and the defendant had the same opportunity to cross-examine witnesses used before the clerk as he would have had if the damages had been assessed by the court. The rule admitting the reproduction of the testimony of a deceased witness, requires that the testimony reproduced should have been pertinent to the issue on trial at the time the witness testified, and hence if objection had been seasonably made to some portion of the testimony reproduced, it would doubtless have been excluded. But no such objection having been made in the County Court, it cannot be made here.

Judgment affirmed.