Talmage *et al. v.* Bierhause *et al.*

Filed Oct. 16, 1885.

---

No. 12,120.

TALMAGE ET AL. *v.* BIERHAUSE ET AL.

SET-OFF.—*Demands Must be Mutual.—Finding by Jury.*—To make one demand a set-off against another, both must mutually exist between the same parties; but where the mutuality is disputed, and there is evidence from which the jury may find that the transactions were between the same parties, its finding of such fact will not be disturbed.

PLEADING.—*Defect of Parties to Answer.— Waiver.—Practice.*—A defect of parties to an answer which presents a set off or other claim which might constitute an independent cause of action, must be taken by demurrer when apparent, or by plea when not apparent, or it will be deemed waived.

PRINCIPAL AND AGENT.—*Agent's Authority to Warrant.—Presumption.*—An agent, upon whom general authority to sell is conferred, will be presumed to have authority to warrant unless the contrary appears.

SAME.—*Sale of Commodity not Present.*—It will be presumed, in the absence of a showing to the contrary, that a warranty is not an unusual incident to a sale by an agent for a dealer in a commodity, where the thing sold is not present and subject to the inspection of the purchaser.

SAME.— *When Principal Liable Notwithstanding Instructions to Agent.*—Though the authority of the agent be restricted by instructions from his principal, the latter will be bound by a warranty attending a sale by the agent unless the purchaser knew of such restriction.

From the Knox Circuit Court.

W. H. De Wolf and S. N. Chambers, for appellants.
F. W. Viehe and M. J. Niblack, for appellees.

MITCHELL, C. J.—On the 10th day of June, 1882, John

T. Talmage and Daniel Talmage, trading under the firm name of Dan Talmage's Sons, in the city of New York, sold and delivered to E. Bierhause & Son, in Vincennes, Indiana, twenty bags Rangoon rice, for the price of $242.80.

To a complaint on the account for goods sold and delivered, the defendants answered specially in two paragraphs, in both of which it was averred that on the 24th day of March, 1882, the plaintiffs, for a stipulated price, agreed to sell and deliver to the defendants another lot of rice, which was to be of good merchantable quality; that they guaranteed that the rice to be delivered would not spoil, nor become musty, unmerchantable or unfit for use, before the end of the summer then next ensuing, if kept in a dry, cool place; that in pursuance of the agreement so made, the plaintiffs delivered the rice, for which the defendants, upon receipt of it, paid the stipulated price. It is averred that notwithstanding the rice was kept in a dry, cool place, it became musty, unmerchantable and unfit for use before the end of the summer, to the defendants' damage in the sum of four hundred dollars. In addition to the foregoing, the second paragraph contained the averment that the rice which had been purchased and paid for was not of good merchantable quality when delivered. This paragraph offered to set off so much of the damages growing out of the first purchase as equalled the plaintiffs' claim, and prayed judgment for the excess.

Separate demurrers were overruled to the answers, and upon issues made trial was had by a jury, resulting in a verdict for the defendants for $110.80.

The only assignment of error discussed by appellants' counsel is that which brings in review the rulings of the court in overruling a motion for a new trial. This motion assigned for cause that the verdict was contrary to law, and was not supported by sufficient evidence.

The evidence is in the record, and from it the following facts may be epitomized: At the time the several sales were made the firm of Dan Talmage's Sons, composed of the in-

dividuals first above mentioned, was doing business as wholesale rice merchants in the city of New York. The same persons, with one C. J. Huguenin, composed a firm trading as wholesale rice merchants, under the name of Dan Talmage's Sons & Co., in Charleston, South Carolina. The order for the rice, about which the controversy arose in this case, was taken from the defendants, who are wholesale jobbers in Vincennes, by one John S. Talmage, a travelling salesman employed by the New York house, but who also habitually took orders for the house in Charleston. All orders taken by him were sent to the New York house. It appeared in evidence that the defendants had frequently dealt with the New York house before, and it did not appear that they knew of the Charleston firm, or, if they did, that it was differently constituted from that in New York, although they were told at the time the order was given, which embraced both foreign and domestic rice, that the domestic rice would come from Charleston, and the foreign rice from New York. At the time the order was taken, the plaintiffs' salesman entered in the defendants' memorandum book of orders the following : " Dan Talmage's Sons & Co., 50 bbls. R. rice, $6\frac{1}{8}$, 10 bgs. Rangoon, $5\frac{1}{8}$." It does not appear directly who forwarded this order to the Charleston house, but it may be inferred from the fact that the travelling salesman testified that he forwarded all orders taken by him to the New York house, that it was forwarded from the New York to the Charleston house. The foreign rice was forwarded from New York and the domestic, about which the controversy arose, from Charleston. The New York firm drew two separate drafts, and received payment for both shipments. The New York firm claims to have collected the Charleston shipment as agents for the Charleston firm. At the time the order was given, the evidence tends to show that one of the defendants inquired of the plaintiffs' salesman whether his rice would keep. He replied that " he would guarantee it to keep all summer if kept in a dry, cool place." The rice was received at Vincennes some time dur-.

ing the month of April, 1882. One barrel of it was examined casually on its arrival, and seemed to be all right, and according to the sample exhibited at the time of the sale. The whole was put in a dry, cool place, and not further examined until some time in July following, when it was found to be musty and damaged.

There was evidence tending to show that the rice was of merchantable quality when delivered at Charleston. Further than as above stated, there was no testimony relating to its condition or quality when received at Vincennes.

It is contended by the appellant, that because the rice, which was guaranteed to keep during the summer, was sold to the defendants by the Charleston firm, which was composed of one member different from that in New York, from whom the rice for the price of which suit was brought was received, the claim for damages growing out of the sale of the one can not be set off against the price of the other.

While it is true, that in order to make one demand a set-off against another, both must mutually exist between the same parties, there is nevertheless evidence in this case from which the jury may have found that both transactions were had with the New York firm. Confessedly, the order for the rice which became unmerchantable was taken by the plaintiffs' agent, together with an order for some foreign rice, and the inference is that the whole order was sent by him to the New York house, to which payment was made for the whole. Under the circumstances, the whole transaction could as well have been regarded as having occurred with the New York firm, as part with it and part with the Charleston firm, and as the jury found that it was all with the plaintiffs, we can not say there was no evidence to support the finding. Moreover, the question of parties is not properly raised in the record. The first and second paragraphs of the defendants' answer set up that the unmerchantable rice was purchased from the plaintiffs. Each presented a claim by way of set-off for

damages. It is conceded that the plaintiffs who composed the New York firm were also members of the firm doing business in Charleston.

The replication simply denied the averments contained in the answer, without taking objection or presenting any question as to a defect of parties. In this state of the record the question of a defect of parties must be deemed waived. *Cleaveland* v. *Vajen,* 76 Ind. 146; *Thomas* v. *Wood,* 61 Ind. 132; *Akerly* v. *Vilas,* 21 Wis. 377, *ibid.* 88. The same rule is applicable to an answer which presents a set-off or other claim which might constitute an independent cause of action that applies to a complaint. If a defect of parties is apparent on its face, objection may be taken by demurrer. If not so apparent, it must be taken by plea.

It is next contended that the evidence fails to show that the salesman had authority to make the guaranty which the defendants claimed was made.

The inference to be drawn from the argument of counsel is, that it was incumbent on the defendants to prove affirmatively, either that express authority to that end had been conferred, or that such sales are usually attended with warranties. It may be said that the position contended for has the support of authority, but the authorities supporting it are, in the main, cases which involved an agency to do a single act, as the sale of some article by an agent in whose hands the particular article was placed for sale. *Andrews* v. *Kneeland,* 6 Cow. 354; *Smith* v. *Tracy,* 36 N. Y. 79; *Cooley* v. *Perrine,* 41 N. J. L. 322; *Brady* v. *Todd,* 9 C. B. (N. S.) 592.

We think the rule generally prevailing is, that an agent upon whom general authority to sell is conferred will be presumed to have authority to warrant, unless the contrary appears. Authority to sell generally, without any restrictions, carries with it *prima facie* authority to do any act or make any declaration in regard to the subject-matter of the sale necessary to consummate the contract and usually incident thereto, and until the contrary is made to appear, it will be

presumed that a warranty is not an unusual incident to a sale by an agent for a dealer in a commodity or article, where the thing sold is not present and subject to the inspection of the purchaser. *Ahern* v. *Goodspeed,* 72 N. Y. 108; *Sturgis* v. *N. J. Steamboat Co.,* 62 N. Y. 625; *Nelson* v. *Cowing,* 6 Hill, 336; *Schuchardt* v. *Allens,* 1 Wall. 359; *Boothby* v. *Scales,* 27 Wis. 626; *Howard* v. *Sheward,* L. R., 2 C. P. 148; *Deming* v. *Chase,* 48 Vt. 382.

In all such cases, even though the authority of the agent is restricted by instructions from his principal, he will be bound by a warranty attending a sale made by the agent, unless the purchaser knew of the restriction. *Murray* v. *Brooks,* 41 Iowa, 45.

It may be proper to state that no question is made as to whether or not the statement made by the salesman, to the effect that the rice would keep all summer, if kept in a cool place, constituted a warranty or not. This is tacitly assumed on both sides. We decide nothing upon that point.

Judgment affirmed, with costs.

