BLACKSTONE THEATRE CORPORATION *v.* GOLDWYN DISTRIBUTING CORPORATION.

[No. 11,938. Filed January 7, 1925. Rehearing denied March 11, 1925. Transfer denied June 14, 1927.]

1. SALES.—*Burden of proof in action for damages for breach of contract for goods sold or leased, and discharge of such burden.* —In an action to recover damages for breach of a contract whereby plaintiff sold to defendant the right to exhibit certain films and pictures belonging to plaintiff for a stipulated price, the plaintiff had the burden of proving the amount of its damage, but it discharged this burden by proving the contract price, the defendant's breach of said contract by refusing to accept any more of the films and plaintiff's willingness to perform, and was not required to prove that it had not received other compensation for the use of the rejected films, or that, by the exercise of reasonable diligence, it might have done so, these being matters of defense. p. 281.

2. SALES.—*Buyer, having refused to receive goods sold, entitled to reduction from contract price if seller received compensation from others for rejected goods or could have obtained it by diligence.*—In action for damages for defendant's breach of a contract whereby the plaintiff sold to the defendant the right to exhibit certain moving picture films for a definite term, the plaintiff's receipt of other compensation for films rejected by the defendant or the failure to exercise due diligence to obtain other compensation, would entitle the defendant to a reduction from the contract price, which proof must be adduced by the defendant, and in the absence of such evidence, the contract price was the proper measure of damages. p. 281.

3. EVIDENCE.—Testimony of the manager of a corporation that he signed contracts on behalf of the corporation amounted to the statement of a fact and not the statement of a conclusion. p. 281.

4. PRINCIPAL AND AGENT.—*Effect of private limitations on authority of general agent.*—Private limitations on the authority of a general agent have no effect on a third person who deals with the agent in good faith, in ignorance of such limi-

tations, and in reliance on the apparent authority with which the agent is clothed.    p. 283.

5.  CORPORATIONS.—The general manager of a moving picture theatre for a corporation had apparent authority to contract for the use of films therein, and could bind the corporation by such contracts.    p. 283.

From St. Joseph Superior Court; *Lenn J. Oare,* Judge.

Action by the Goldwyn Distributing Corporation against the Blackstone Theatre Corporation for damages for breach of contract.    From a judgment for plaintiff, the defendant appeals.    *Affirmed.*   By the court in banc.

*John G. Yeagley, G. A. Farabaugh* and *Walter R. Arnold,* for appellant.

*Parker, Crabill, Crumpacker & May* and *W. S. Carlisle,* for appellee.

NICHOLS, J.—Appellee's first paragraph of complaint averred that the appellee was engaged in the business of leasing, furnishing and selling the right to use films and pictures for exhibition purposes in moving picture theatres, and appellant was engaged in the exhibition of moving picture films and owned and operated a theatre for that purpose; that, during the three years last past, appellee, at the special instance and request of appellant, sold to appellant, for exhibition in its theatre, the right to use moving picture films and pictures owned or controlled by appellee, at a total agreed rental or service charge of more than $20,000.    That appellant neglected and refused to pay appellee, on the total amount owed to appellee for the use of said pictures, the sum of $12,830, for which appellant is indebted to appellee.

Other paragraphs, later filed, were based upon the several contracts alleged to have been entered into by appellant and appellee.    Appellant answered in three

paragraphs, denial, payment, and *non est factum*, under which last paragraph of answer, appellant attempted to prove that the pretended execution of the several contracts was by the manager of appellant without authority. Appellee filed reply in denial, and a second paragraph addressed to the third paragraph of answer, in which it was averred that, throughout the whole of the year 1921, and until February 27, 1922, appellant had in its employ, as manager, one Berkson, and that said manager, in the discharge of his duties, purchased the pictures to be exhibited and managed the theatre; that he was the manager of appellant's business during the term of his employment, and that appellant well knew that said manager, on behalf of said appellant, purchased the right to exhibit pictures, owned, produced, or in the control of appellee, for exhibition, and with the full knowledge and consent of appellant, assumed to and did execute the written agreements set out in each paragraph of complaint, and that there was no advice communicated to appellee that there was any limitation of the authority of said manager to purchase the right to exhibit pictures, and appellant permitted appellee to continue in the belief that said manager possessed full authority to make the several contracts, and that the appellant received, exhibited and paid appellee for the right to exhibit all of the moving pictures mentioned and described in the several contracts except those that it is alleged appellant refused to accept, and that all of said pictures paid for were paid for by appellant under the terms and conditions of the several contracts, and not otherwise, and without protest or notice to the appellee that appellant was not bound by said several contracts, and appellant so continued to accept, pay for, and exhibit pictures under the terms of said several contracts until March 3, 1922, when the treasurer of appellant wrote appellee that the appellant was

no longer operating the Blackstone theatre, and advising appellee to ship no more films to appellant, the great expense in operation having forced appellant to lease the property to another management, which was the first notice to appellee that appellant no longer desired to perform its part of the contract, made in its behalf by appellant's manager, and appellant did not at that time intimate that said contracts were not its contracts because the said manager did not have authority to execute them. That, by the terms of said contracts, appellee was prohibited from leasing or licensing the right of exhibition to any other theatre in South Bend, which right was a valuable asset, and the contracts with the appellant aforesaid prevented appellee from selling said right to other persons or concerns. That on each of said contracts, appellant had deposited $500 in cash, and that said deposits were made by the treasurer of appellant, with appellant's knowledge and consent. That appellant knew that appellee was making said contracts in reliance upon the authority of said manager to execute them, and with full knowledge thereof, appellant, on numerous occasions, asked appellee to modify said contracts and did not at any time intimate to appellee any lack of authority of said manager, and, relying upon said facts, the appellee was induced to make each of the several contracts, and except for such facts, would not have made and entered into them.

There was a trial by jury which resulted in a verdict for appellee for $5,000, on which, after appellant's motion for a new trial was overruled, judgment was rendered. The only error assigned in this court is the action of the court in overruling appellant's motion for a new trial, which presents the alleged errors hereinafter considered.

Contending that the damages are excessive, appellant states that, by the well-known rule, the burden was on

1, 2.

appellee to prove the amount of damages that it had sustained. Appellee, however, had discharged this burden by proving the contract price, appellant's violation of the contract, and appellee's willingness to perform. *Milhollin* v. *Adams* (1917), 66 Ind. App. 376, 379, 115 N. E. 803; *Waznitski* v. *George B. Limbert & Co.* (1918), 66 Ind. App. 382, 118 N. E. 317. Appellee was not required to prove that it had received no other compensation for the use of the rejected films or that, by the exercise of reasonable diligence, it might have done so. If appellee had received other compensation, or if it had not been duly diligent in trying to obtain the same, appellant was entitled to a proper reduction from the contract price, but the burden of showing such compensation or want of diligence was on appellant, and, in the absence of such evidence, the contract price was the proper measure of damages. *Cox* v. *Way* (1832), 3 Blackf. (Ind.) 143; *Ewing* v. *Codding* (1840), 5 Blackf. (Ind.) 433; *Hamilton* v. *Love* (1899), 152 Ind. 641; *Milhollin* v. *Adams, supra.*

3.

Appellant contends that it was error for the court to permit witness G. E. Berkson to testify, over appellant's objection, that he signed the contracts in suit on behalf of appellant, for the reason that such evidence is the statement of a conclusion. These contracts, which were in evidence, were signed "Blackstone Theatre by G. E. Berkson, Manager" or to that effect. We regard the evidence as a statement of a fact rather than a conclusion. *Citizens Bank, etc.,* v. *Opperman* (1917), 188 Ind. 212, 219; *Baltes Land, etc., Co.* v. *Sutton* (1903), 32 Ind. App. 14, 69 N. E. 179; *Indiana Ins. Co., etc.,* v. *Glenn* (1895), 13 Ind. App. 534. Whether he had authority so to sign, or could bind appellant by so doing, will be hereinafter considered.

Over the objection of appellant, Exhibits 1 to 13 inclusive were introduced in evidence. These exhibits were the contracts for pictures which were sued on in the several paragraphs of complaint. Appellant's objection to the introduction of these exhibits presents the question as to whether G. E. Berkson, who undertook to execute the contracts on behalf of appellant, had authority so to do, or could and did bind the company by his action. The same question is presented by error assigned as to the giving of certain instructions tendered by appellee, and to the refusal to give certain instructions tendered by appellant.

In answer to interrogatories propounded to appellant, it was admitted that Berkson was the manager of appellant's theatre, and in the contract of employment, reduced to writing on February 1, 1921, it was provided that Berkson agreed to devote his entire time to his employment, that he should be known as the manager of the theatre business, that he should perform all of the duties incident to and actually performed by a manager of a moving picture business of like character, and that he was to employ and discharge all help needed in and about the operation of the moving picture business, except the book-keeper and members of the orchestra. He was the only one who ever made any contracts for pictures, and thirty-three payments were made for pictures for which he contracted, totaling $10,364.11. Parts of all of the contracts shown by the exhibits were performed and payments made thereunder. There was a limitation on Berkson's right to purchase, in that he was not to purchase any picture that involved an expenditure of more than $2,000 without the concurrence of the board of directors, and later it was stipulated that all contracts were to be made with the concurrence of Mr. Toepp, treasurer of appellant company. While all the contracts involved were made before this stipu-

lation as to the concurrence of Toepp, it appears that all contracts were made in the presence of Toepp and without objection by him, and that he paid all moneys and made all deposits on the pictures so contracted for. At a meeting of the board of directors, the contracts were discussed, and Berkson thereafter went to Chicago and secured a reduction on the price of some of the pictures. It does not appear that, at the meeting of the board of directors, there was any repudiation of the acts of Berkson in executing the contracts.

We find nothing that indicates a disposition to cancel any of the contracts or any parts thereof until appellant leased the theatre to other parties, when 4, 5. it wrote appellee not to ship any more films, saying that the great expense of operating had forced it to lease the property, and that the same was then in the hands of another corporation. This train of circumstances strongly impresses us, as it must have impressed the jury, that *non est factum* was an afterthought. But, however this may be, the circumstances set out above show that Berkson was the general manager of the moving picture business of appellant at the time the contracts involved were made, and, as such, he was to perform all of the duties incident to and actually to be performed by a manager of such a business, which, of course, would include the procurement of the films necessary to operation. Mr. Maberry, appellee's general agent, through whom the contracts were made, testified that he had no knowledge of any limitation on the authority of appellant's manager, Mr. Berkson, in the purchase of films or the execution of contracts therefor, and there is no evidence that appellee had any knowledge of such limitation. It is well established that private limitations on the general authority of an agent have no effect on a third person who deals with the agent in good faith, in ignorance

of such limitation, and in reliance on the apparent authority with which the agent is clothed. *Fatman* v. *Leet* (1872), 41 Ind. 133; *Commercial Union Assurance Co.* v. *State, ex rel.* (1888), 113 Ind. 331, 15 N. E. 518; *Talmage* v. *Bierhause* (1885), 103 Ind. 270, 2 N. E. 716; *Elkhart Hydraulic Co.* v. *Turner* (1908), 170 Ind. 455, 84 N. E. 812; 2 C. J. 566. There was no error in admitting the contracts in evidence, and, with the above interpretation of the law as to appellant being bound by the acts of its manager within the apparent scope of his authority, we do not need to consider alleged errors of the court as to instructions. Other errors are presented, but we do not deem them of controlling force.

Judgment affirmed.