[No. 9758.   Department One.   March 11, 1912.]

Pacific Aviation Company, *Appellant*, v. Ralph L. Philbrick *et al.*, *Respondents.*[1]

Sales—Action for Price—Warranty—Evidence — Sufficiency. There is no sufficient evidence of a warranty to the defendants by the seller of an aeroplane that it was in good condition and that one W. was an experienced aviator and capable of making flights with the machine at the city of H., where it appears that the machine was sold direct to W. by a bill of sale warranting title only, that defendants assisted W. to purchase the machine by giving the promissory note in suit to W., after the seller of the machine had informed defendants that flights could not be made at the city of H. on account of the unsuitability of the grounds, and defendants relied on the oral representations of W. that he could make the flights.

Evidence—To Vary Writing—Bill of Sale—Oral Warranty. Where a bill of sale warrants only the title, evidence of an oral warranty of the good condition of the machine is inadmissible, as varying the terms of the writing.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered May 8, 1911, upon findings in favor of the defendants, in an action upon a promissory note.   Reversed.

*T. H. McKay* and *Arthur I. Moulton*, for appellant.

*James P. H. Callahan*, for respondents.

Gose, J.—This is a suit upon a promissory note.   There was a judgment for the defendants for their costs.   The plaintiff has appealed.

The respondents admit the execution and delivery of the note, and affirmatively allege, in substance and effect, that,

[1]Reported in 121 Pac. 864.

on or about July 1, 1910, the appellant owned a Curtiss bi-plane and engine; that the respondents, being then desirous of giving certain exhibitions of aeroplane flights at Hoquiam, entered into negotiations with the appellant; that the note represents a part of the consideration for the bi-plane and engine; that the appellant, for the purpose of inducing the respondents to expend $1,000 in the purchase of the bi-plane and engine, "falsely and fraudulently . . . represented and warranted" to the respondents that they were in good condition and capable of making successful flights; that one Waldron was an experienced aviator and had made two flights in the aeroplane; that, acting upon "such false and fraudulent representations and warranties and believing the same true," the respondents were induced to pay the appellant $500 in money, and to execute the note in suit; that the bi-plane and engine were not in good condition and were not capable of making successful flights; that Waldron was not an experienced aviator, and had never made flights in that or any other "aeroplane," as the appellant well knew; and that, by reason of "such false and fraudulent representations and warranties," the respondents were induced to expend large sums of money in the purchase of the bi-plane and engine and in carrying them from Portland, Oregon, to Hoquiam, Washington, where the flights were to be made; "by reason whereof, the defendants have been damaged to the amount of $750." The respondents prayed a judgment for that amount. The appellant joined issue upon the new matter in the answer.

The court found the facts substantially as alleged in the answer; and further found, that the bi-plane and engine have not been delivered or tendered to the appellant; that on July 10, the respondents took from Waldron a chattel mortgage on the bi-plane and engine, to secure them on account of the $500 advanced by them to Waldron, and to secure the payment of the note in question; that the respondent E. A. Philbrick is a lawyer, and represented the respondents in all

the transactions with the appellant, and that he drew the note, bill of sale, and chattel mortgage referred to in the record. It will be observed that there is no direct allegation of a sale of the machine to either respondents or Waldron, and the court made no finding as to who was the purchaser except in a memorandum opinion filed prior to the filing of the findings, where he expressly stated that he found that the sale was made to respondents.

The answer appears to have been drawn upon the theory of the breach of an oral warranty, but the respondents now insist that their defense to the action is predicated upon the fraud of the appellant. The history of the transaction is this: The respondents were a committee chosen by the citizens of Hoquiam to arrange for an aeronautic exhibition as a part of the entertainment to be given on the Fourth of July, 1910. As such committee, they entered into negotiations with the appellant for an aeroplane flight on that day, and a representative of the appellant went from Portland to Hoquiam to view the ground and complete the arrangements. Upon his return to Portland, the appellant on June 30, wired the respondents as follows: "You misrepresented your grounds. You stated you had half mile straight. Our aviator refuses to fly on 600 feet. Therefore the deal is off." Upon the receipt of this message, the respondents E. A. Philbrick and Hamburg went to Portland, on June 30, for the purpose of requiring the appellant to make the flight, insisting that its representative had definitely agreed to do so and had thereby caused them to advertise the fact that the flight would take place. The appellant refused to accede to their demand, and the bi-plane and engine were purchased on the following morning and shipped to Hoquiam. The purchase price was $1,500. The respondents paid $500 in money, gave their note for a like sum, and Waldron seems to have been given a credit for the remaining $500. The note was drawn in favor of Waldron, and by him forthwith indorsed to the appellant. The items purchased were con-

veyed by the appellant direct to Waldron by a bill of sale drawn by the respondent E. A. Philbrick.    The testimony of the respondents who conducted the negotiations with the appellant clearly show that Waldron was the purchaser.    The respondent E. A. Philbrick testified that he said to the appellant: "Any deal you make with Waldron as to the ownership of the machine, that is between you two fellows."    And again: "I spoke up and said, this machine I understand is going to go to Waldron;" and in response to the question: "The machine was sold to Waldron, wasn't it?" he answered: "Yes, sir."    The respondent Hamberg was asked: "You said you would not buy it at all?" and answered: "Yes, sir; we said we would not buy it."    The attitude of the respondents in their brief makes this explanation necessary, as they seem to contend that the evidence justified the statement in the memorandum opinion.    The bill of sale and chattel mortgage, together with the oral testimony, make it clear that the sale was made to Waldron, and that it was so understood and intended by all the parties to the transaction.

This brings us to the material question, viz., the alleged oral warranty and fraudulent representations.    It would seem that, when the respondent Philbrick, a lawyer, was insisting that the appellant had violated its contract and was demanding performance, he would not have depended upon oral representations of the appellant's officers in making a second contract.    Moreover, we think the testimony of the respondents tends to support the writings.    In this connection, reference is again made to the telegram.    The respondents testified that the appellant's officers represented that Waldron was an experienced aviator and had made two flights in the machine.    On the other hand, these officers testified that they made no such representations, but that they only stated that he had made balloon ascensions.    The respondent E. A. Philbrick testified that he had a conversation with Waldron, in which he said to the latter: "I told him Mr. Manning, the

appellant's president, said he, Waldron, was anxious to be the owner of a flying machine, . . . and I asked him if he had any experience and he said 'Oh, yes; I have been up a couple of times.' I don't remember whether he told what machine he was in or not. I remember of satisfying myself that he knew what he was talking about." Again, the witness said: "I asked him if he was an experienced aviator, and he said, 'Yes,' and that satisfied me." The respondent Hamberg testified: "I says, 'Mr. Waldron, now you have flown the machine, have you?' and he says: 'Yes, I have.' And I said: 'No monkey business down here. We must have a machine that can fly,' and I says, 'Are you certain you can make it go or can go up in the machine?' and he said, 'Yes, sir; everything will be all right.'" Respondent E. A. Philbrick was aked if Mr. Manning, the appellant's president, did not say to him that its representative who had viewed the ground had reported that it "was impossible to fly on any of the grounds in or around Hoquiam, and that it was unsafe to attempt a flight there;" and answered: "Yes, sir; Mr. Manning said something in that regard." He was then asked: "Didn't he say that in terms?" and answered: "Well, that was the effect of it, I remember." He was then asked whether the conversation in reference to the sale of the machine was had subsequent to the making of these statements, and answered: "Yes, I think so." The respondent Hamberg was asked: "Mr. Manning had told you that his son said he could not fly it there?" and answered, "Yes, sir." On July 5, the respondent E. A. Philbrick wrote the appellant as follows: "As you may know, our machine did not get into the air either of the days scheduled, but the fellows expect to be able to get it rigged up some way (I don't know a blessed thing about machines, so can't tell what they expect to do), and make some flights later on. I thought best to let you know, as I stated that I would probably be down to take up the note before the 10th, the day it is due; but under the circumstances shall wait and see if we cannot get in some cash

from flights, and will unless present plans miscarry and something intervenes to prevent my coming down Saturday evening and square up with you." This testimony established two things, (1) that the respondents were informed that flights could not be made at Hoquiam, owing to the unsuitability of the grounds, and (2) that the respondents relied upon Waldron's representations that he had made flights in the machine and that he could fly it at Hoquiam. The respondents had advertised that a flight would be made as a part of the program for the celebration of the national holiday, and were, of course, determined, if possible, to keep faith with the people. To accomplish this purpose, it is apparent that they were willing to accept the representations of Waldron that he could make the flight with the machine. In furtherance of this object, they assisted him in making the purchase. He failed to make good his representations.

Touching the question of a parol warranty, it suffices to say that the bill of sale to Waldron warrants title only. The instrument is complete in itself, and evidence of a prior or contemporaneous parol warranty was inadmissible. *Hockersmith v. Ferguson,* 63 Wash. 581, 116 Pac. 11; *Buffalo Pitts Co. v. Shriner,* 41 Wash. 146, 82 Pac. 1016; *Davis Calyx Drill Co. v. Mallory,* 137 Fed. 332; *Seitz v. Brewer's Refrigerating Mach. Co.,* 141 U. S. 510.

The judgment is reversed, with directions to enter a judgment for the appellant as prayed for in the complaint.

Dunbar, C. J., Chadwick, Parker, and Crow, JJ., concur.