[No. 15416.   Department One.   January 20, 1920.]

GLEASON COMPANY, *Respondent,* v. N. M. CARMAN,
*Appellant.*[1]

EVIDENCE (169)—PAROL EVIDENCE TO VARY WRITING—COMPLETE-
NESS OF WRITING.  A written offer to manufacture for defendant's
shop special design lighting fixtures as per plans submitted, which
plaintiff's complaint showed were unusual and for defendant's
special use, is so incomplete as to admit proof of a special warranty
of fitness and efficiency.

SALES (103)—WARRANTIES—INSPECTION, EXAMINATION OR TEST.
Upon an issue as to whether there was a collateral oral warranty
that articles manufactured for defendant's special purpose would
meet the requirements, the fact that plaintiff installed one of the
articles to ascertain if it would meet the requirements must be taken
as an admission of an outstanding warranty as to its efficiency.

SALES (108)—IMPLIED WARRANTIES—FITNESS FOR PURPOSE IN-
TENDED.  Upon an executory sale by a manufacturer of articles to be
made for a special purpose, there is an implied warranty of fitness
for the purpose intended.

SALES (127)—ACTIONS FOR PRICE—DEFENSES—FRAUDULENT REP-
RESENTATIONS.  It is a good defense to an action for the price of
special electric light fixtures manufactured for a special use in the
defendant's shop, that defendant was induced to enter into the con-
tract by false representations as to the efficiency of the articles,
being without knowledge of the subject-matter, even if the seller did
not know the statements were false.

Appeal from a judgment of the superior court for
King county, Jurey, J., entered February 1, 1919, upon
findings in favor of the plaintiff, in an action on con-
tract, tried to the court.   Reversed.

*McClure & McClure* and *Walter S. Osborn,* for ap-
pellant.

*Howard G. Cosgrove* and *Ernest B. Herald,* for re-
spondent.

MITCHELL, J.—This action was brought by plaintiff
to recover four hundred dollars, the alleged value of

[1] Reported in 187 Pac. 329.

certain lighting fixtures manufactured by it for the defendant, under a written contract set out in the complaint as follows:

"June 2, 1917.

"Mrs. N. M. Carman,
      "Cheasty Bldg., Seattle.

"Dear Madam: We propose to furnish and install eight (8) special design crystal fixtures as per designs submitted, for the Carman shop; our compensation to be the sum of four hundred dollars ($400) net, and the old fixtures now there to be replaced by the new ones.

"Very truly yours,
                  "H. E. Gleason Company,
                          "Per H. H. Bailey.

"Accepted: N. M. Carman,
"June 2, 1917."

The complaint further alleged that, after the fixtures were manufactured by plaintiff, it notified defendant it was ready to install them, but she refused to allow them to be installed, refused to accept or pay for them, and that they were valueless to plaintiff as fixtures or material. In her answer, after appropriate denials, but admitting the writing, defendant interposed two affirmative defenses, as follows:

In the first defense she alleged, in substance, that she is engaged in business in Seattle, Washington, as a manufacturer and dealer in women's attire, maintaining a large storeroom, expensively and elaborately equipped for the purpose of displaying the goods manufactured and sold by her, and that it is necessary therefor that her salesrooms have an abundance of soft and pleasing light. That plaintiff, by its agent, one Bailey, submitted to her a design for electric lighting, and represented to her that fixtures constructed according to that design would furnish a soft yet illuminating electric light that would bring out the hues and tints in the goods dealt in by her, illuminate the rooms

and furnish a light not harsh, glaring or injurious to the eyesight of her employees and customers. That, relying solely upon the representations made by Bailey and believing them to be true, she signed and delivered the writing set out in the complaint. That thereafter plaintiff installed in her store a sample light, represented by plaintiff to have been constructed according to the design submitted to her and referred to in the writing, for the purpose of testing and determining if it would comply with the representations made by plaintiff through its agent for the purpose of inducing her to sign the writing in question. That the sample light so furnished and tested did not give a soft and illuminating light, but on the contrary the light was glaring, harsh and offensive to the eye, injurious to the eyesight of her employees and customers, and if the lights were used, would be greatly injurious to her employees' health and would make her goods appear displeasing to the eye, and result in great injury to her business. That, because of such defect, she refused to accept the sample lamp, or any of them so constructed. That all the representations of the agent were false and untrue; that it was impossible to use the lights in the business as conducted by her; and that, because the representations were false and untrue, the writing signed by her is not binding.

The second affirmative defense is of a similar kind, but somewhat extended. In effect, it repeated the allegations of the first affirmative defense, and continued by averring that she had no knowledge whatsoever of electricity or electric lighting, or of the method or means necessary to be adopted for the purpose of producing the quantity or quality of illumination required in her business, and that she relied entirely upon the knowledge and experience represented to be possessed by plaintiff's agent for such purposes and the mode

and means to be adopted to accomplish her purpose, and so relying, she signed the writing set out in the complaint. That the electric lamps manufactured according to the design would not give such light as she required in her business, but would give a harsh, glaring light, injurious to the eyesight of her employees and customers and harmful to the appearance of her merchandise and wholly unsuitable for use in her business.

To each of the affirmative defenses plaintiff filed and presented a motion to strike it as being "incompetent, irrelevant and immaterial." The motion was granted as to each defense. The case was tried to the court without a jury, upon the complaint and denials. There were findings and conclusions in favor of plaintiff, upon which judgment was entered for the full amount sued for. The defendant has appealed, and assigns as error the order striking the affirmative defenses.

Why the affirmative matter in the answer was forced out of the action by the motion to strike is not made clear. Indeed, because counsel on both sides, in presenting the case in this court, argued the matter as if the defenses were tested by a general demurrer, we shall so consider it in our disposition of the case.

There are only two principal contentions made here.

First, counsel for appellant argue that the written contract is not conclusive against an oral warranty, and that, under the affirmative defenses, appellant is entitled to show there was a warranty that she relied on and that there was a breach of the warranty. Counsel for respondent argue to the contrary.

Second, counsel for appellant contend the affirmative defenses allege there were false representations made by respondent's agent as to the quality and quantity of the light the designs would accomplish, upon which she relied in signing the contract; that, upon the dis-

covery thereof by the test made with the one furnished for that purpose, she had the right to refuse, as she did refuse, to accept or pay for any of them. This is disputed by counsel for respondent. The defenses are so nearly alike they may be considered together; indeed, by including the first within the latter, as is done in the pleading, they must be considered together under the general objection made by the respondent. Not much less could have been said than that expressed in the writing if the only purpose had been to protect the contract from the force of the statute of frauds; while the contention of respondent that the contract is so complete as to exclude proof of a breach of warranty we think is altogether untenable.

In the writing respondent offered not only to furnish, but to furnish and install, not simply crystal fixtures, but crystal fixtures of a special design as per design submitted. By whom submitted is suggested by the fact that the written offer is made by the respondent, but it is made plain by the answer, which alleges they were submitted by the respondent. That is, respondent submitted a special design of crystal fixtures, of which it would manufacture and install eight for the Carman (appellant) shop. It is not to be assumed that the things designed were intended as ornaments. The writing speaks of them as fixtures, that is, they were for use; and, not inconsistent with or altering the terms of the writing, the answer says they were to be used for the purpose of producing a certain kind and quality of electric light. Clearly appellant wanted something different from a known kind of fixture; for the writing says a special design is submitted, while the answer says a certain kind of effect was desired and explained to respondent's agent, who represented that, by the design it prepared, the desired effect would be obtained. Indeed, the designs actually manufac-

tured and offered by the respondent are so special and unusual that in its complaint it is alleged that the fixtures were specially prepared for appellant's special use and ''are of no value to the said plaintiff, either as fixtures or as material.'' In addition, the answer, the allegations of which must now be taken as true, states that, after the manufacture of one of the fixtures, it was installed at appellant's place of business to ascertain if it would meet the required test, which conduct must be taken as an implied admission on the part of respondent of an outstanding warranty on its part of the efficiency of the fixtures as a part of the whole contract it was under obligations to perform. And yet counsel for respondent contend that the written contract was so complete as to preclude all inquiry as to any warranty concerning the fitness and efficiency for service of articles it specially manufactured according to special designs of its own for appellant's special use. The defense does not rely upon an implied warranty, but a special warranty is asserted. The contract is silent upon the subject of warranty, which is not at all inconsistent with its terms, and it appears upon its face, supplemented by the effect of the complaint, as not having been meant to specifically set out all of the terms of the agreement.

Clearly, if in a certain kind of case it is permissible to prove an implied warranty, a purchaser may in that kind of a case show there was a specific warranty to that same effect, if in fact a specific warranty was made. And in the present case it will be borne in mind that this contract is an executory one by which a manufacturer agreed to make and deliver articles designed to accomplish a special purpose. Upon this subject, this court, in the case of *Hurley-Mason Co. v. Stebbins, Walker & Spinning,* 79 Wash. 366, 140 Pac.

381, Ann. Cas. 1916A 948, L. R. A. 1915B 1131, said, on pages 380 and 381 of the opinion:

"According to the great weight of authority, there is a distinction between executory sales by manufacturers and executory sales by dealers; the rule being that, on a sale by a manufacturer, there is an implied warranty of fitness for the purpose intended, and of freedom from defects not discoverable by ordinary inspection and tests, while on a sale by a dealer, there is no such implication, in the absence of a specific warranty to that effect. All that is required of a dealer is an exercise of good faith and fair dealing. *Kellogg Bridge Co. v. Hamilton,* 110 U. S. 108; *Farrow v. Andrews & Co.,* 69 Ala. 96; *Hoe v. Sanborn,* 21 N. Y. 552, 78 Am. Dec. 163; *Remy, Schmidt & Pleissner v. Healy,* 161 Mich. 266, 126 N. W. 202, 29 L. R. A. (N. S.) 139; *Bierman v. City Mills Co.,* 151 N. Y. 482, 45 N. E. 856, 56 Am. St. 636, 37 L. R. A. 799; *Carleton v. Lombard, Ayres & Co., supra.*"

In the case of *Puget Sound Iron & Steel Works v. Clemmons,* 32 Wash. 36, 72 Pac. 465, this court, in discussing a manufacturer's sale upon a written order for a logging engine, said:

"Counsel for appellant strenuously argue that the order for the engine as set out above is conclusive against warranty of any kind, and that the respondents can not be heard to say that there was any other agreement than that contained in the order. A number of authorities are cited to the effect that, where an article is sold by a formal written contract, which is silent on the subject of warranty, no oral warranty made at the time or previously can be shown, as the writing is conclusively presumed to embody the whole contract. But these cases are generally cases where the articles purchased are of a special known kind, and where there was a formal contract embodying all the terms and conditions of the agreement. But there is no such formal contract in this case. The contract here is simply an order for the engine, signed in the form of a letter by respondent C. H. Clemmons only. It does not purport to contain any part of the contract

or conditions which the appellant was to perform. This court, in *Gordon v. Parke & Lacy Machinery Co.*, 10 Wash. 18 (38 Pac. 755), stated the rule as follows:

" 'Where there have been collateral oral agreements, and the parties have not, by their written contract, appeared to intend to reduce their entire negotiation to written form, there are many cases sustaining the admission of parol evidence concerning the unwritten terms of such agreements. 17 Am. & Eng. Enc. Law, p. 443; *Pierce v. Woodward*, 6 Pick. 206; *Chapin v. Dobson*, 78 N. Y. 74 (34 Am. Rep. 512); *Willios v. Hulbert*, 117 Mass. 151; *Graffam v. Pierce*, 143 Mass. 386 (9 N. E. 819). But in all of the foregoing, as well as in many other cases which might be cited, the written contract itself was resorted to as the source of authority for receiving parol evidence; and this is the universal rule. ''The test of the completeness of the writing proposed as a contract is the writing itself. If this bears evidence of careful preparation, of a deliberate regard for the many questions which would naturally arise out of the subject matter of the contract, if it is reasonable to conclude from it that the parties have therein expressed their final intentions in regard to the matters within the scope of the writing, then it will be deemed a complete and unalterable exposition of such intentions. If, on the other hand, the writing shows its informality on its face, there will be no presumption that it contains all the terms of the contract.'' '

''Under this rule it is clear that parol evidence was admissible to prove a warranty in the case at bar.''

The case of *Chapin v. Dobson*, 78 N. Y. 74, 34 Am. Rep. 512, referred to in *Puget Sound Iron & Steel Works v. Clemmons, supra,* in quoting from the case of *Gordon v. Parke & Lacy Machinery Co.*, 10 Wash. 18, 38 Pac. 755, was a case of a manufacturer's sale and strikingly similar to the present one. That action was brought upon a written agreement, as follows:

"Philadelphia, July 9, 1868.
''We agree to furnish John Dobson with the following machinery, on terms stated: 16 48-inch and 7

60-inch first Breaker Feeders, at three hundred dollars each delivered at depot at Pawtucket, R. I., to be sent by steamer from Boston to Philadelphia, and allowance of three dollars to be made on each machine for freight. Man's time and expenses from Philadelphia to be charged extra for applying the machines. Terms, cash on delivery, 5 per cent commission to be allowed on each machine, 5 60-inch and 4 48-inch to be delivered as soon as possible, the balance in thirty days thereafter.	Harwood & Quincy,

"Agents for Chapin & Downes.

"I agree to the above.	John Dobson."

The defendant in that case, under a trial amendment of the answer, over plaintiff's objection that the agreement was embodied in the writing, which could not be varied by oral evidence, was permitted to show that plaintiff made an oral warranty that the machines should be made so as to do defendant's work well and satisfactorily, and that, as a fact, they were so badly constructed they could not be made to do defendant's work well and satisfactorily. The court of appeals sustained the ruling allowing the amendment and admitting the proof, and in discussing the matter said:

"The plaintiffs introduced in evidence a written instrument dated July 9, 1868. There is nothing upon its face to show that it was intended to express the whole contract between the parties. The referee finds that it does not contain it, and that the plaintiffs at the same time guaranteed to the defendant that the machines mentioned therein should be so made that they would do the defendant's work satisfactorily or they should not be paid for, and the defendant thereupon signed the writing in consideration of said guaranty. He also finds that the matters in writing and the above guaranty constituted the contract or agreement between the parties. It was within the province of the referee to make the finding above referred to (*Lindley v. Lacy,* 17 C. B. [N. S.] 578), and the evidence fully warrants it. The written contract related to machines thereafter to be manufactured by the

plaintiffs, fixed the price at which they were to be furnished, the number, the place and manner of delivery, the time and manner of payment. Nothing else was provided for. These terms are to remain as written. Some of them impose obligations upon the plaintiffs and others on the defendants. The parol agreement was on the part of the plaintiffs. By it they guaranteed 'that the machines should be so made that they would do the defendant's work satisfactorily.' The writing specified machines described as 'First Breaker Feeders,' of certain dimensions. How they should work, and whether well or ill is not stated. If it had called for a machine to satisfy a required purpose, of which the plaintiffs had notice and which they had undertaken to supply, they would have been bound as a condition of the contract to supply an article reasonably fit for the purpose, and a warranty would have been implied that it was so. (*Howard v. Hoey,* 23 Wend. 351; *Brown v. Edgington,* 2 M. & G. 279; *Jones v. Bright,* 5 Bing. 533; *Gaylord Manuf. Co. v. Allen,* 53 N. Y. 518.)

"It is contended however by the appellants that this rule does not apply in this case because a specific and designated machine was the subject of the contract. It may well be doubted whether, in view of the findings of the referee and his refusals to find, the case is brought within the rule laid down in cases on which the appellants rely, but it is not necessary to determine that question, for the guaranty as made does not contravene the written contract, and is not inconsistent with it. If the fitness of the machines is implied the guaranty is in harmony with it and adds nothing; if it is not implied the paper contains no declaration that the machines shall be taken with all faults and insufficiencies, or at the defendant's risk. The parol evidence therefore contradicts no term of the writing nor varies it.

"The written contract and the guaranty do not relate to the same subject matter. The contract is limited to a particular machine as such. The guaranty is limited to the capacity of the machine. It is one thing

18—109 WASH.

to agree to sell or furnish machines of a specific kind, as of such a patent, or of a particular designation, and another thing to undertake that they shall operate in a particular manner or with a certain effect, or, as in this case, that they shall do the buyer's work satisfactorily. The first would be performed by the delivery of machines answering the description or the specifications of the patent; and whether they did or not conform thereto would be the only inquiry. As to the other, it in no respect touches the first, nor does it operate as a defeasance, but leaves it valid and to be performed, and the consequences of a breach of the guaranty are a recoupment or abatement of damages in favor of the defendant, and this is so, whether the contracts are in writing or not; for the guaranty is valid although not in writing, and the same rule must apply, for in either case the relation of the guaranty to the contract would be the same. In *Heyworth v. Hutchinson* (L. R. [2 Q. B.] 447), the defendants bought of the plaintiffs a specific quantity of wool, then at sea but expected to arrive; 'the wool to be guaranteed about similar to certain samples' referred to. The defendants refused to receive the wool alleging that it was not similar to the samples, and being sued for non-acceptance set up that fact as a defense. The court held it invalid, that the contract was for specific goods, and therefore the clause of guarantee was only collateral to the contract, and so the buyer could not reject the wool on the ground that it was not conformable to the sample, but his remedy would be either by a cross action on the guarantee or by giving the infirmity in evidence in reduction of damages. This case is in point. It seems plain both upon principle and authority that the plaintiffs' undertaking was collateral to the contract by which they undertook to furnish the machines, and that the referee committed no error in receiving the evidence objected to."

To the same effect, see: *Nashua Iron & Steel Co. v. Brush,* 91 Fed. 213; *Telluride Power Transmission Co. v. Crane Co.,* 208 Ill. 218, 70 N. E. 319; *Phelps v. Whitaker,* 37 Mich. 72; 2 Mechem, Sales, § 1255.

The case of *Buchanan v. Laber,* 39 Wash. 410, 81 Pac. 911, cited by respondent, is not in point, because it involved an attempt on the part of the purchaser to prove a warranty different from one made certain by the terms of the contract. That is, the contract covered the subject of warranty. Nor the case of *Buffalo Pitts Co. v. Shriner,* 41 Wash. 146, 82 Pac. 1016, in which there was an offer of proof tending to vary express terms of the written contract. To the same effect are the cases of *Hoffman v. Tribune Publishing Co.,* 65 Wash. 467, 118 Pac. 306; and *Mooney v. Mooney Co.,* 71 Wash. 258, 128 Pac. 225. The case of *Pacific Aviation Co. v. Philbrick,* 67 Wash. 414, 121 Pac. 864, was one in which the court found the writing was complete, covered the subject of warranty, and would not allow proof of a different kind of warranty; while the cases of *Eilers Music House v. Oriental Co.,* 69 Wash. 618, 125 Pac. 1023, and *Winton Motor Carriage Co. v. Blomberg,* 84 Wash. 451, 147 Pac. 21, were cases in which attempts were made to prove collateral agreements in the face of what were considered complete written contracts containing specific provisions to the effect that the contracts as written contained all of the agreements between the parties. Nor is the case of *Mianus Motor Works v. Vollans,* 83 Wash. 680, 145 Pac. 997, cited by respondent, in point. It was a case where machinery had been constructed upon information and data given by the purchaser's foreman, according to specifications and a blueprint submitted to the foreman, who was conversant with engines and machinery of that kind and who, during the time it was being manufactured for the vendor, without notice to the vendor, actually had changes or additions made not set out in the blueprint or in the specifications. There was no question in the case as to the foreman's author-

ity to bind the purchaser, and it happened the foreman tested the machinery, found it satisfactory, and accepted it before complaint, which was made later on. Other authorities cited by the respondent we do not review, believing it would serve no useful purpose.

As to the second main contention, we are equally well satisfied the defenses alleged are good. Taking the answers upon their face, there are allegations of false representations. It is alleged that respondent's agent, upon ascertaining what appellant wanted, represented he would supply it, and accordingly prepared a special design to accomplish that purpose. It is alleged she was without knowledge, or means of knowledge, of their falsity, or knowledge of the subject-matter of electricity and electric fixtures; that she relied upon and was induced by the false representations of respondent's agent to sign the writing, and that she denied liability and refused to accept the fixtures upon discovering they were unfit, and that the representations were false — clearly, averments of fraud which she was entitled to plead and prove, whether the contract was in writing or not. In legal effect, there was no consideration for her promise existing at the time of her refusal to pay.

The rule applicable in cases of this kind is expressed in *Agnew v. Hackett,* 80 Wash. 236, 141 Pac. 319, wherein, speaking of the defense of false representation of the plaintiff in making a sale of personal property, it was said:

"In cases of this character, liability is determined, not only by a statement of that which is known to be false; but false representations of material facts made to induce a party to act, and relying upon the truth of which he does act to his detriment, are actionable, whether the party making the false statements knew them to be false or not."

See, also, *Scribner v. Palmer,* 81 Wash. 470, 142 Pac. 1166; *George v. Kurdy,* 92 Wash. 277, 158 Pac. 965; *Griffith v. Strand,* 19 Wash. 686, 54 Pac. 613.

In the case of *Northwestern Lumber Co. v. Callendar,* 36 Wash. 492, 79 Pac. 30, the court said:

"It is unnecessary to cite authorities in this case, for it has already been established by this court, in accordance with the great weight of authority, in *Huntington v. Lombard,* 22 Wash. 202, 60 Pac. 414, that where one who is not familiar with machinery is dealing with one who is, the representations of the seller amount to a warranty of the machinery, whether so intended by him or not, if the purchaser relied on such statements as a warranty and was induced thereby to make the purchase."

Whether the appellant could have established the allegations of her defenses is not the question we are concerned with at this time. The error made by the trial court lies in the fact that appellant was precluded from introducing any evidence whatever upon the matters embraced within those allegations. Whether considered from the viewpoint of simply a motion to strike as "incompetent, irrelevant and immaterial," or as a general demurrer, the order of the court putting the affirmative defenses out of the case was erroneous, calling for a reversal of the judgment, which is hereby directed.

HOLCOMB, C. J., PARKER, and MAIN, JJ., concur.