[No. 28705.   Department Two.   August 3, 1942.]

SAM SCHNITZER *et al., Appellants,* v. PANHANDLE
LUMBER COMPANY, LIMITED, *et al.,*
*Respondents.*[1]

[1]Reported in 128 P. (2d) 501.

*Hamblen, Gilbert & Brooke,* for appellants.

*E. L. Sheldon* (*W. F. McNaughton* and *Wm. S. Lee,* of counsel), for respondents.

BLAKE, J.—For more than thirty years prior to 1940, the defendant Panhandle Lumber Company, Limited, owned and operated two lumber mills—one at Ione, Washington, and the other at Spirit Lake, Idaho. Each mill was operated by electricity generated by steam at the plant. In addition to using electricity in running the mills, defendant, through two subsidiary companies, of which it was sole owner, furnished electricity to the towns and their inhabitants.

On April 29, 1940, the company, having decided to go out of business, called for bids on all of its properties except "any cash or accounts receivable or lumber, lath, pickets or poles." Some five alternatives were offered bidders with respect to different classes of property upon which bids would be received. The plaintiffs, Schnitzer and Wolf, doing business as Alaska Junk Company, submitted a bid of $96,745 "for all personal property of every nature including all machinery, tools, equipment, motors, generators, boilers, pipe, valves and fittings (including underground, overhead, steam lines, etc.), all rails in the yard (including approximately eleven miles of sixty pound rails), cars, locomotives and all rail equipment, all mill and office buildings and office equipment, including refuse burners, located at Spirit Lake, Idaho, and Ione, Washington, but not including land, lumber, lath, pickets, or poles, or cash or accounts receivable or Utility Companies, . . . "

On June 4, 1940, the president of defendant company wired plaintiffs as follows:

"OUR BOARD HAS AUTHORIZED MR MORAN TO SELL YOU THE IONE AND SPIRIT LAKE MILL PROPERTIES ON BASIS YOUR BID DATED MAY 28 NINETEEN FORTY HE HAS BEEN INSTRUCTED TO CALL ON YOU AND ARRANGE DETAILS OF SALE"

Prior to June 14th, F. E. Moran, who was secretary of defendant, and plaintiffs entered upon conferences looking toward the transfer of the properties. These negotiations ended in the delivery of a bill of sale by defendant to plaintiffs on June 14th. This bill of sale contained a comprehensive general description of the properties transferred, but specifically excepted "the Diesel engine and generating property of the Ione Water and Light Company situate upon the millsite at Ione." The bill of sale also contained the following conditions and reservations:

" . . . that the lumber company is to have free and exclusive use, without charge, of said yards, office building, office furniture, planing mill and shipping equipment and all vehicles and boats and other appliances useful for a period of six months from May 28, 1940, *for use by the Company in processing and shipping the lumber and timber products now in the said yards;* . . . " (Italics ours.)

Without the knowledge or consent of plaintiffs, defendant, during the six-month period, used the generating plants also for the purpose of supplying electricity to the towns of Ione and Spirit Lake and their inhabitants.

Plaintiffs brought this action to recover the value of the diesel engine excepted from the bill of sale; the value of the use of the electrical plants in supplying electricity to the towns and their inhabitants; and for the value of blocks and timber used as foundations for the lumber piles. The cause was tried to the court,

which found in favor of plaintiffs, in the amount of five hundred dollars, for the unauthorized use of the electrical plant at Ione and against them with respect to the diesel engine and the block and timber foundations.

From judgment accordingly entered, plaintiffs appeal.

The appeal presents the three questions indicated: (1) whether appellants are entitled to recover the value of the diesel engine; (2) whether they are entitled to recover a greater amount, or at all, for the use of the electrical plants in supplying electricity to the towns; and (3) whether they are entitled to recover the value of the blocks and timber supporting the piles of lumber.

*First.* Appellants offered to prove that, at the time the conferences were in progress leading up to the delivery and acceptance of the bill of sale, the respondent's representatives promised to deliver the diesel engine unless it were sold to a prospective purchaser of the subsidiary utility company at Ione. Objection to the offer of proof was sustained—very properly, we think, if the integrity of written instruments is to be maintained. 3 Jones Commentaries on Evidence (2d ed.), p. 2699, § 1484; *Pacific Aviation Co. v. Philbrick,* 67 Wash. 414, 121 Pac. 864; *Peterson v. Denney-Renton Clay & Coal Co.,* 89 Wash. 141, 154 Pac. 123; *Nat'l Bank of Commerce v. Pettibone,* 125 Wash. 607, 217 Pac. 505; *Petkovits v. Huessy,* 126 Wash. 38, 217 Pac. 41; *Benson v. Metropolitan Life Ins. Co.,* 126 Wash. 125, 217 Pac. 709.

Appellants argue that the contract of sale was effected by their bid and the telegram of June 4th from respondent's president; that they could have maintained a suit for specific performance upon it. Perhaps, but the argument is not persuasive in face of

the bill of sale with its specific exception of the diesel engine. It is our view that the bill of sale amounted to an integration of the agreement—precluding evidence, in the absence of fraud or duress, of prior negotiations. Restatement of the Law of Contracts, pp. 307, 309, §§ 228, 229. Our cases of *Champlin v. Transport Motor Co.*, 177 Wash. 659, 33 P. (2d) 82, and *McGregor v. First Farmers-Merchants Bank,* 180 Wash. 440, 40 P. (2d) 144, relied on by appellants, are readily distinguishable from this. The former was grounded on the doctrine of "business compulsion." The latter simply regarded a cashier's check as a receipt for money.

█ *Second.* Appellants contend that the relationship of respondent with respect to the use of the electrical plants was analogous to that of bailee of property to be used for a specific purpose, and that, having used the properties for purposes beyond the restrictive use defined in the bill of sale, respondent is liable for the value of such user. On the other hand, respondent contends that its position is analogous to that of a lessee under a lease which contains a descriptive reference to the character of tenancy contemplated; and that the clause, *"for use by the Company in processing and shipping the lumber and timber products now in said yards,"* did not prevent its use of the electrical plants for other and different purposes. In other words, respondent contends that the clause should be construed as permissive, while appellants argue it should be construed as restrictive.

There is no doubt that, in the light of the reservation, the relationship between appellants and respondent bears considerable analogy to that of bailor and bailee and also to that of lessor and lessee. We think, however, that, for the purpose of determining the

character and effect of the clause in question, their relationship bears a much closer analogy to that of grantor and grantee. Viewing the reservation in that light, there can hardly be any doubt that the clause in question renders the reservation restrictive rather than permissive. For, if a reservation is ambiguous or doubtful, it will be construed in such way as to resolve the doubt against the grantor in favor of the grantee. 16 Am. Jur. 615, § 309; 2 Devlin on Real Estate (3rd ed.), 1830, § 979; *Aumiller v. Dash*, 51 Wash. 520, 99 Pac. 583; *Higdon v. Nichols*, 204 Ky. 56, 263 S. W. 665; *Klaer v. Ridgway*, 86 Pa. 529; *Grafton v. Moir*, 130 N. Y. 465, 29 N. E. 974, 27 Am. St. 533; *Beardslee v. New Berlin Light & P. Co.*, 207 N. Y. 34, 100 N. E. 434, Ann. Cas. 1914B, 1287; *Ft. Wayne v. Lake Shore & M. S. R. Co.*, 132 Ind. 558, 32 N. E. 215, 18 L. R. A. 367, 32 Am. St. 277.

■ For the purpose of determining the measure of damages, we must resort to the analogy of bailor and bailee. In such cases, the measure of damages is the value of the use beyond that for which the bailment is made. 8 C. J. S. 300, § 36; 3 Elliott on Contracts, p. 382, § 2190; *Empire Refineries, Inc., v. Guaranty Trust Co. of New York*, 271 Fed. 668; *Patterson v. New River, Etc., Coal Co.*, 87 W. Va. 177, 104 S. E. 491.

With respect to the value of the unauthorized use of the plants, there is a wide divergence of opinion between the witnesses for the appellants and the witnesses for respondent. No useful purpose can be subserved in reviewing the evidence upon the issue. Suffice it to say that the problem is approached by the witnesses for the respective parties upon quite different theories, and that, in our opinion, the theory of respondent, under the circumstances, presents the sounder and fairer measure of damages. Upon that

theory, the value of the unwarranted use of each plant was three hundred dollars a month. The period of unwarranted use of the Spirit Lake plant was from May 28th to September 19th—approximately three and two thirds months. The unwarranted use of the Ione plant was from May 28th to November 10th—approximately five and one-third months. The value of the unwarranted use of both plants, therefore, amounts to $2,700, to which sum appellants are entitled to judgment.

*Third.* Excepted from the bill of sale were "all . . . lumber, lath, pickets, poles, logs, . . . " Under this exception, we think the blocks and timber in question were integral parts of the lumber piles. Appellants' claim with respect to them is without merit.

The cause is remanded, with direction to modify the judgment to the extent above indicated.

ROBINSON, C. J., BEALS, MILLARD, and JEFFERS, JJ., concur.